570 So.2d 13 (1990)
Ricky L. ROCHELLE, et al., Plaintiffs-Appellees/Appellants,
v.
STATE of Louisiana, Through DOTD, Defendant-Appellant/Appellee.
No. 89-454.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Rehearing Denied November 5, 1990.
Writ Denied January 11, 1991.
*14 Plauche, Smith & Nieset, Frank M. Walker, Jr., Lake Charles, for plaintiff/appellee/appellant.
Wm. Doran, Jr., Baton Rouge, for defendant/appellant/appellee.
Before DOUCET, YELVERTON and KING, JJ.
YELVERTON, Judge.
This is an appeal by the State of Louisiana through the Department of Transportation and Development (DOTD), from a trial court decision finding it negligent in maintaining a state highway. DOTD also appeals the trial court's finding that the conduct of Carol Rochelle, a driver fatally injured in the accident, was not the sole proximate cause of the accident. Ricky Rochelle, the husband of the deceased, answers the appeal on behalf of himself and their two sons arguing that the deceased should not have been found negligent, and that the general damages awarded were insufficient. After a careful and thorough review of the record and the jurisprudence, we affirm the trial court's findings of negligence but modify the trial court's allocation of fault and increase the general damage award.

FACTS
The trial court summarized the facts of this case in its written reasons for judgment. We adopt this portion of his reasons as our own.
Trial was held in this matter on June 15, 1988. The suit arises out of the death of Carol Rochelle on Saturday, August 16, 1986, on La. Highway 28 West in Rapides Parish a few miles west of the City of Alexandria. Mrs. Rochelle, the thirty-five year old mother of two boys, was employed as a paralegal in Lake Charles. She had been in Alexandria for the purpose of attending a meeting of The Southwest Louisiana Association of Paralegals. Whether lost or confused, she was headed eastbound on Hwy. 28, on the section of that highway running between Leesville and Alexandria, when she rounded the broad shallow curve wherein Leroy's Grocery is located. The eastbound lane in this particular curve on Hwy. 28 is positioned on the inside of the curve. There is a slight bank to the *15 highway through the curve, the eastbound lane being slightly lower than the westbound lane. This inclination is shallow and is in no way abrupt. As a consequence of the banking precipitation falling upon the roadway would tend to flow across the surface of the road from the westbound lane to the eastbound lane and to collect on the eastbound shoulder. The view across the curve is open and unobstructed.
On the evening in question, the highway was wet. There had been light showers earlier. The time was approximately 8:00 p.m. It was dusk.
As she rounded the curve, Mrs. Rochelle's right front tire dropped off the pavement and into a rut which had developed along the inside of the curve. When she attempted to return to the pavement an action called scrubbing occurred in which the tire will not regain the pavement until the friction between the tires off the pavement and the pavement reaches a critical point. When this occurs at high speed, the tires are not aligned so as to reenter the roadway gradually, but will cause the car to leap across the road. This effect is accentuated on a curve such as that in front of Leroy's Grocery.
When she apparently attempted to pull back onto the highway from the rut into which her right front wheel had fallen, she jerked across her lane, and into the westbound lane, where she was struck and injured, then subsequently struck by a second vehicle after which collision she was dead. There is the possibility she may have been forced to return to the pavement since evidence adduced at trial indicated that another vehicle driven by Marty Peoples may have been pulled up to the shoulder in preparation to reentering the highway.
The trial court found that the rut on the shoulder of the road was a proximate cause of the death of Mrs. Rochelle and that DOTD was negligent in its failure to properly maintain the shoulder. The court also found that Mrs. Rochelle was negligent in veering off the pavement and forcing her car back onto the roadway without slowing to a safe speed, and that this negligence was a proximate cause of the accident. In allocating the comparative negligence of each party, the court assigned Mrs. Rochelle 80% of the fault and DOTD 20% of the fault. The plaintiffs were awarded special and general damages.
We find that Mrs. Rochelle and DOTD were both negligent but reverse the trial court's findings regarding the allocations of fault.
FAULT OF DOTD
DOTD contends that the trial court erred when it found DOTD negligent in its maintenance of the shoulder of Highway 28. We find no error.
DOTD has the basic duty to maintain all highways in the state highway system. The maintenance of highway shoulders in a reasonably safe condition is included within the duties of DOTD, and this duty encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. Although DOTD is not an insurer of the safety of motorists using state highways, it can not knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Coleman v. State, Through DOTD, 524 So.2d 1281, 1284 (La.App. 3d Cir.1988); Deville v. State, Through DOTD, 498 So.2d 1142, 1144 (La.App. 3d Cir.1986). DOTD may be liable for negligence if it is actually or constructively aware of the hazardous condition or defect and fails to take corrective action within a reasonable time.
The trial court's finding that there was a rut or drop-off on the shoulder of the highway which was five inches in depth is supported by sufficient evidence.
Marty Wells, who helped his father run Leroy's Grocery, which was located on the inside of the curve, testified that on the day of the accident there was a six-inch straight vertical drop-off which ran the length of the curve. He further stated that there had been problems because the many trailer houses that frequented the area often dropped a wheel off the road on a curve. This, together with rain, had *16 caused severe rutting. Wells had seen several vehicles drop off the road on this particular curve. In addition, Donald Hinkley, a customer in Leroy's Grocery, and Marty Peoples, a witness to the accident, both testified that there was a six-inch drop-off at the time of the accident.
The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). In LeBlanc v. State, 419 So.2d 853 (La.1982), the Supreme Court held that the department's duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp drop-off from the roadway, and her consequent instinctive oversteering of her vehicle. After evaluating the relationship between DOTD's duty and the risk involved in the present case, we find Mrs. Rochelle's actions were within the scope of DOTD's duty.
We find that DOTD was actually aware of the hazardous condition and failed to take corrective action within a reasonable time.
The shoulders on Highway 28 were the worst in the area and needed routine repair once or twice a month. At the time of the accident, it had been about two months since repair work was done on this area. The area was inspected on Tuesday, August 12, 1986, and Friday, August 15, 1986, preceding the accident, which occurred on Saturday, August 16, 1986. Repair work was not done until the Monday after the accident. DOTD employees testified at trial that they inspected the road from their trucks, that they did not get out to check closely the severity of the drop-off, and that they could have easily overlooked the particular spot where the accident occurred.
For the above reasons, DOTD knew or should have known of the dangerous situation and, therefore, it breached its duty to Mrs. Rochelle.
The Supreme Court in Sinitiere held: Negligence is only actionable where it is both a cause in fact of the injury and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973). Using a "but-for" test to determine cause in fact clearly results in a finding that the accident would not have resulted had the road shoulder been substantially even with the travel portion of the road....
Applying the "but-for" test to the present case, we agree with the trial court that DOTD's negligence was a cause in fact of the accident. The accident would not have happened if there had not been a substantial drop-off between the traveled portion of the road and the shoulder of the road. Further, there is a substantial relationship between the failure to correct a substantial drop-off on a highway shoulder and an automobile accident, the risk encountered by Mrs. Rochelle. Therefore, we affirm the trial court's finding of DOTD's negligence.

FAULT OF MRS. ROCHELLE
This accident occurred when Mrs. Rochelle inadvertently drove her car off Highway 28 and attempted to reenter the highway. The trial court found that she was negligent both in straying from the highway, and also in taking the action she took after encountering the drop-off. We disagree in part.
As we noted in McDaniel v. State, Department of Transportation, 398 So.2d 88 (La.App. 3d Cir.1981), writ denied, 404 So.2d 277 (La.1981):
A motorist owes the duty of reasonable care which includes the additional duties of keeping his vehicle under control and maintaining a proper lookout for hazards. *17 Sinitiere v. Lavergne, supra. The court in Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979), stated that a motorist's duty to drive reasonably does not extend to the risk of injury from striking an unexpected and unexpectable hazard resulting from a negligently maintained highway shoulder. However, the Court in the Sinitiere case stated that this language in Rue "does not establish the highway shoulder as a `zone of recovery' for every straying motorist." The Supreme Court's point is well-taken. However, we do not believe the Court intended to leap to the other extreme and automatically deny recovery to every motorist who strays onto the shoulder and thereafter does not accomplish a safe re-entry back onto the roadway's riding surface. Instead, we feel it our duty to, on a case-by-case basis, focus on the facts and circumstances presented in each case to determine whether the straying motorist breached his duty to drive reasonably.
The facts and circumstances presented in the case before us lead us to the conclusion that the trial court could not have clearly erred in finding Mrs. Rochelle at error in straying off the roadway but it was clear error for the trial court to find her negligent in her attempt to reenter the highway.
Mrs. Rochelle had a duty to maintain control of her car. However small, it was negligence for her to allow her car to run off the roadway. Thus, we cannot say the trial court clearly erred in finding her negligent for not controlling her car.
We do find the trial court erred in finding her negligent in attempting to reenter the roadway. When the wheel of Mrs. Rochelle's car hit a five-inch drop-off and landed in a rut she quickly turned the wheel to get back on the highway. The testimony shows there were extenuating circumstances which required Mrs. Rochelle to proceed in haste without thought. Marty Peoples and Tammy Marler, who were in a truck waiting on the side of the highway to enter the roadway, testified that they thought Mrs. Rochelle was going to hit them. There is a very strong likelihood that Mrs. Rochelle also thought she would hit them if she remained on the shoulder, therefore she quickly attempted to reenter the highway. The evidence clearly shows that, compounded with her predicament in the rut, she was faced with an emergency, the possibility of hitting another car, and that she reacted accordingly. We find no negligence in that behavior. See McDaniel v. State, Through DOTD, 398 So.2d 88 (La.App. 3d Cir.1981), writ denied 404 So.2d 277 (La.1981) (driver found free of negligence for straying off roadway and his actions thereafter).

APPORTIONMENT OF FAULT
With the above observations in mind, we now consider the trial court's apportionment of fault. The trial court found Mrs. Rochelle 80% at fault and DOTD 20% at fault for their respective contributions to the accident. Both parties appeal the court's findings. We modify the judgment to reverse this apportionment.
The percentage allocation of fault in a comparative negligence case is a question of fact. As any other question of fact, it should not be disturbed in the absence of manifest error on the part of the trier of fact. Brooks v. City of Baton Rouge, 558 So.2d 1177, 1179 (La.App. 1st Cir.1990).
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La. 1985) the Supreme Court indicated which factors should be considered in order to apportion fault under a system of comparative fault:
"In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. [Quoting Uniform Comparative Fault Act 2(b) (1979).] In assessing the nature of the conduct of the parties various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what *18 was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. And of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
In applying the factors as set forth in Watson to assess the nature of the conduct of each party, we find that the trial court clearly erred in its allocations of fault for the following reasons.
The evidence shows that Mrs. Rochelle was traveling on Highway 28 at dusk/dark, a time which required cars to have their lights on. She had never been on this highway in her life and appeared to be lost or confused as evidenced by the direction she was traveling. The roads were wet as there had been light showers earlier. As she rounded the curve her right front tire inadvertently strayed off the pavement and hit the five-inch drop-off and she found herself in a rut.
In Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979), the Supreme Court stated that a motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. This court in Quinn v. State Through Dept. of Highways, 464 So.2d 357 (La.App. 3rd Cir.1985), writ denied, 467 So.2d 1134 (La.1985), recognized that oversteering to the right by motorists on a right hand curve (despite the centrifugal force to the contrary) is a common occurrence.
We find Mrs. Rochelle's driving a minimal factor in the cause of the accident. The trial court clearly erred in finding her 80% at fault. We cannot say that it would have been clearly erroneous for the trial court to have found Mrs. Rochelle 20% at fault, which we so conclude.
DOTD, on the other hand, was fully aware of the danger of its conduct, failing to maintain the shoulders of the road. The DOTD guideline manual in existence at the time of the accident stated that a drop-off or rut that exceeded five inches in depth is a potential hazard to traffic and immediate repairs, interrupting scheduled work, should be made.
Kenneth Lasyone, a foreman for DOTD, testified that his job was to carry out the instructions of his supervisor, John Griffith. Griffith's job was to inspect roads and shoulders to determine if they needed work. Griffith worked until he took sick leave August 14, 1986. He testified that when inspecting the roads and shoulders he did not use the manual, he did not know exactly what the manual said, and he did not have any objective criteria to decide when a drop-off is dangerous. He also stated that he inspected the road August 12, 1986, but that he could easily have overlooked that spot because he checked the drop-offs from his truck on the highway. In addition, he testified that after he inspected it on August 12, 1986, it is a possibility that he told Lasyone that the shoulder needed blade work.
Lasyone, who took over as inspector for Griffith on August 14, 1986, testified that when he inspected roads and shoulders he did not know what the guidelines were, as to what was or was not a permissible depth for a drop-off, and that if it looked hazardous, he ordered work to be done. He further stated that he made an inspection of the area Friday, August 15, 1986, the day before the accident, and that if he had seen a four to six-inch drop-off he would have had someone out on that day to make repairs. He could not recall any of the conditions of the shoulders when he inspected Highway 28 on Friday, but repair work was done Monday, August 18, 1986, two days after the accident.
Willie Pugh, Jr., the district maintenance engineer at the time of the accident, testified that Griffith is supposed to use the manual as a guideline for determining when work is necessary on those shoulders.
DOTD employees testified that blading the shoulders, a technique seriously questioned as to whether it was the most efficient way to repair the roads, was done on *19 Highway 28 once or twice a month. The shoulders were bladed June 18 or 19, 1986, and not again until August 18, 1986, a full two months later.
It must also be noted that there were no signs posted on this curve to warn motorists of the dangerous situation. Lasyone testified that it was his duty when filling in for Griffith to determine if a sign is needed to warn motorists. He was not aware of the manual's guidelines on signs for low or soft shoulders and when they are required. The manual states:
The SOFT SHOULDER sign is intended for use to warn of a shoulder condition that presents a hazard to vehicles that may get off the pavement.
One sign shall be placed near the beginning of a soft-shoulder condition, and other signs shall be placed at intervals throughout the length of the road where the condition exists, (emphasis added).
The signs were easily available to DOTD to use in warning motorists.
DOTD was fully aware of the dangerous conditions of this particular curve, and although there were routine inspections, DOTD failed to maintain the shoulder at the time of this fatal accident. The risk created by leaving a five-inch drop-off unrepaired was a great risk as evidenced by the death of Mrs. Rochelle. DOTD, in the superior position, failed in their duty owed to motorists. Thus, we find the trial court clearly erred in finding DOTD only 20% at fault. We apportion DOTD's fault at 80%, a finding strongly supported by the evidence.

DAMAGES
The trial court awarded the sum of $975,799.35 for pecuniary damages and the following sums for nonpecuniary damages:

 Suffering of Carol Rochelle $ 15,000.00
 (survival action)
 Loss to Ricky Rochelle $ 60,000.00
 (Including anguish, consortium
 and loss of companionship)
 Loss to son John Rochelle $ 75,000.00
 (To include all elements
 of loss)
 Loss to son Chad Rochelle $ 75,000.00
 (To include all elements
 of loss)
 ___________
 TOTAL AWARD $225,000.00
 (For nonpecuniary damages)

The award was to be reduced by the degree of negligence attributable to Mrs. Rochelle. The plaintiffs appeal the general damage awards to the husband and children of Mrs. Rochelle.
In order to disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). An abuse of discretion is only found when the award is so excessively high or low as to shock a reviewing court into the realization that it must correct the award. Hanzy v. Sam, 385 So.2d 355 (La.App. 1st Cir.), writ denied, 386 So.2d 357 (La.1980). If an appellate court finds an abuse of discretion and that an award should be raised or lowered, it can only raise or lower the award to the highest or lowest point which would have been within the trial court's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Brooks, 558 So.2d at 1181.
The evidence in the record reflects an exceptionally close family who will have to rebuild their lives without a wife and mother. Two close family friends testified at trial leaving the picture that the Rochelle union was truly a storybook marriage. In summary, Carol Rochelle was an exceptional wife and mother, whose first priority was her family. Every day she woke up early to fix breakfast for her family, she fixed dinner nightly, and up until her death, she tucked her children into bed every night. She did almost all the housework and held down a paralegal job at a law firm.
John Rochelle, the eldest son, testified that the whole family worked out together every other day at the Y.M.C.A. On the opposite days, the family would swim or play basketball together. On the weekends they would go camping. Carol often read to the children and helped them with their homework. John testified that he and his brother would call their mother at work when any problems arose, or simply to see what she was doing when they were bored. *20 John received counseling as a result of the loss of his mother.
The record clearly supports an abuse of the trial court's discretion in the general damages awarded to the husband and the children. This was an intimate family whose everyday activities were constantly intertwined with each other. This accident destroyed this family unit.
In Reck v. Stevens, 373 So.2d 498 (La.1979), the Supreme Court stated that when this court finds that the record supports that the lower court abused its much discretion, the appellate court is authorized to disturb the award, but only to the extent of raising it to the lowest point which is reasonably within the discretion afforded the lower court. After determining that the award is insufficient we are then permitted to turn to other cases to determine what would be an appropriate award for the present case. We need cite but one case.
In Ingram v. Caterpillar Machinery Corporation, 535 So.2d 723 (La.1988), the Supreme Court held that an award of $100,000 to $150,000 for each of the minor children in that case, and an award of $200,000 to $300,000 to the widow was not an abuse of discretion.
Under the circumstances of the present case, we regard the lowest award that could have been given to the husband reasonably within the court's discretion, is $250,000, and to each minor child, $125,000.

CONCLUSIONS
For the above reasons, the trial court judgment is reversed in its apportionment of fault. The general damage awards to the husband and children of Mrs. Rochelle are increased. The judgment is affirmed in all other respects. We find Mrs. Rochelle 20% at fault and DOTD 80% at fault, and the awards should be adjusted accordingly. The general damage awards are increased, for the husband, Ricky Rochelle, to $250,000, and the minor children, John and Chad, to $125,000 each. Costs of this appeal are assessed against DOTD.
REVERSED IN PART; MODIFIED IN PART; AFFIRMED IN PART.