DOUCET, Judge.
This appeal arises from a judgment in favor of plaintiffs, awarding damages for wrongful death and loss of support in the net sum of $201,909.00.
The decedent, Keith W. Cay, was a 27-year-old single white male. Mr. Cay was employed by Marine Drilling Company as an offshore roughneck working a 7-on, 7-off shift. According to testimony in the record, on November 3, 1987, Mr. Cay completed his weekly shift and was driven home by his mother and sister to the Sandy Lake Community at approximately 4:00 p.m. Mr. Cay was then driven to Jonesville where he cashed a check for $60.00 at Hutman's 4-10 Store. Thereafter, he was dropped off at the Side Door Saloon in Jonesville by his sister, who then returned to Sandy Lake around 7:00 p.m. The Side Door Saloon owner, Johnny Brazzell, testified that he resumed management of the bar shortly before 10:00 p.m. He stated that Mr. Cay entered the bar around 10:00 p.m. and left around 11:00 p.m.
*1295 The record contains conflicting testimony as to how many beers Mr. Cay consumed during this time. However, Mr. Brazzell and bar patron Donald R. McClure testified that Mr. Cay was not intoxicated. The Side Door Saloon closed around 11:00 p.m. and the decedent left the bar on foot. Five days later, Mr. Cay’s body was discovered on a rock bank 35 feet beneath the new Little River Bridge near Jonesville on Louisiana Highway 124. The record does not indicate that foul play or suicide caused the decedent to fall from the new Little River Bridge.
Suit was instituted by James C. Cay, Jr. and Annie Ruth Mott Cay, parents of the deceased, against the State of Louisiana through the Department of Transportation and Development (DOTD) on May 6, 1988. A bench trial was held on September 23, 1991. The trial court found in favor of the plaintiffs. In its written reasons for judgment, the trial court found that DOTD was at fault as follows:
The fault of the state in the construction of the bridge is clear. The state should have been aware that pedestrians would use the bridge. Foot traffic over Little River outside of Jonesville has always existed. Efforts were made by local officials to have the state establish the old bridge as a pedestrian bridge. That bridge is now closed to all traffic. Across Little River from Jonesville there exists a road side park complete with a fishing area and picnic tables. Down the road, a short walk from the north end of the Little River Bridge is the community of Trinity.
The bridge was built with a Tailing pursuant to AASHTO standards sufficient to protect vehicles from going over the edge. However, the AASHTO standards for pedestrian traffic at the time would have required a minimum rail of three feet. Newer AASHTO standards require a three foot six inch railing for pedestrian traffic.
It is the opinion of this Court that a higher rail would have prevented the fall of Keith Wayne Cay. The inadequate rails on the Little River Bridge were a cause in fact in Cay’s death. The State of Louisiana has a duty to keep highways, road shoulders and bridges reasonably safe for persons of reasonable prudence and exercising ordinary care. Rochelle v. State through DOTD, 570 So.2d 13 (3rd Cir.1990). It was foreseeable and well within the knowledge of the State that pedestrians would use the Little River Bridge. The State should protect pedestrians who use the bridge with an adequate hand rail to prevent a fall. The rail should be higher than 2'8". While that height may protect vehicle traffic, it may create a hazard for foot traffic. A 32" rail is barely knee high and offers no hand rail or other device to allow a pedestrian a chance to grab on or prevent a fall should he trip over the rail. A rail at that height is a violation of the duty owed to pedestrians and creates fault on the part of the State of Louisiana.
The trial court also found that the decedent, Keith Cay, was contributarily negligent as follows:
This Court will find that Cay was not severally [sic] impaired, but that he was simply under the influence of intoxicating beverages. The Court relies on Cay’s history of using alcoholic beverages. He had just returned home from his weekly shift of working in the oil field. He started the evening with approximately $60.00, but very little money was found on his body. He was observed drinking beer at the Side Door Saloon. The most compelling testimony is from Dr. George McCormick, a forensic pathologist who did an autopsy of Cay’s body. It is his opinion that Cay’s blood alcoholic content was at least .12 percent. His motor skills, visual perception, and his ability to react to those things around him would have been impaired.
* * * ⅜ ⅜ *
That fault must be shared in the instant case. Cay was intoxicated albeit not incapacitated due to the use of alcoholic beverages. It was dark and he was dressed in dark clothing. He was walking on the wrong side of the road with traffic rather than against traffic as pre *1296 scribed by state law. [LSA R.S. 32:216 (B)] A combination of those factors surely factored into his fall.
The court rendered judgment apportioning the fault for the accident 60% to the State of Louisiana, Department of Transportation and Development, and 40% to Keith Cay. The court further awarded $336,515.00 in damages for wrongful death and loss of support.
The State appeals questioning the correctness of the trial court's determination of liability on the part of the State and apportionment of fault. The plaintiffs answer the appeal questioning the finding that Keith Cay was comparatively negligent. Plaintiffs, in addition, allege the trial court erred in its determination of apportionment of fault and assert that the damage award is insufficient.
LIABILITY OF DOTD
Before we reach any other assignments of error, it must first be determined whether the DOTD breached a duty owed to the decedent. It is the DOTD’s duty to maintain the State roadways in a reasonably safe condition. Holloway v. DOTD, 555 So.2d 1341 (La. 1990). The DOTD’s liability pursuant to theories of negligence under C.C. Art. 2315 and strict liability under C.C. Art. 2317 hinges on a breach of its duty. Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986).
In the final analysis, the question of whether the State breached a duty under either theory is determined by asking whether the plaintiffs proved that a condition existed which presented an unreasonable danger to those using the highway. Deville v. La. Dept. of Transp. & Dev., 559 So.2d 916, 918 (La.App. 3 Cir.), writ denied, 563 So.2d 883 (La.1990), explains the reasoning for reaching the question on appeal as follows:
While the duty is the same in both strict liability and negligence cases, the basis for determining the existence of the duty is different for each.
To be successful under a strict liability theory, a plaintiff must prove that:
“(1) the thing causing the injury was in the custody of the defendant; (2) the thing causing the harm was defective, i.e., created an unreasonable risk of harm to others; and (3) the defective thing caused the plaintiff’s injury.” (Citation omitted.)
Broussard v. Yellow Freight Lines, Inc., 464 So.2d 987, 990 (La.App. 1st Cir.1985). Under a negligence theory liability will be imposed when the plaintiff shows that the DOTD is actually or constructively aware of an unreasonably dangerous condition, and fails to take corrective action within a reasonable time. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Worsham v. Walker, 498 So.2d 260 (La. App. 1st Cir.), writ denied 500 So.2d 423 (La.1987).
Specifically, the question presented in this case is whether or not the plaintiffs proved that the new Little River Bridge presented an unreasonably dangerous condition.
In 1978 the State of Louisiana, pursuant to State Project 41-01-23, constructed the Little River Bridge on Louisiana Highway 124 connecting the two communities of Jonesville and Trinity. This bridge replaced an older two-lane bridge. The program under which the new bridge was being constructed required that the bridge being replaced be immediately closed to all vehicular traffic upon completion of the new bridge. The United States Coast Guard required that the replaced bridge be completely removed. At the request of the Catahoula Parish Police Jury and the Town of Jonesville, a plan change was instituted which would allow the existing bridge to remain after construction of the new bridge. An unclimbable chain link, barbed wire fence was placed at each end of the old bridge by the DOTD to prevent use of the bridge until the Catahoula Parish Police Jury could adapt the structure to accommodate pedestrians. The new bridge was completed and the old bridge was formally abandoned by the DOTD to the Cata-houla Parish Police Jury to take over and maintain as a pedestrian crossing.
*1297 Upon reviewing the record, we find there was sufficient evidence for the trial court to conclude that the State should have been aware or knew that pedestrians would use the new bridge. The State was made aware of the need for a pedestrian crosswalk by various local agencies. The State barricaded the old bridge to prevent its use.
The State argues that at the time of trial, the Town of Jonesville had flags and welcome signs placed along the old bridge. The State contends that this evidence reflects that Jonesville and not the State, has access and control of the old bridge. They further contend that the fact that the old bridge is closed to all traffic is not the State’s doing. The record shows that the State was required to, and in fact did, barricade the old bridge. The local parish’s or city’s intention to convert the old bridge to a pedestrian crosswalk does not change the fact that until the time of its conversion, the State should have known that the new bridge would have been used as a pedestrian crosswalk.
The State argues that construction of the new bridge had already begun before it was made aware of the need for a pedestrian crossing. The State opines that providing a pedestrian walkway would have increased the cost of construction of the new bridge by 10%. In response to the Town of Jonesville letter requesting that the old bridge be retained upon completion of the new bridge, correspondence dated July 1, 1977 and introduced into evidence reveals that the DOTD intended to accommodate pedestrians on the new bridge. The letter states in pertinent parts the following:
“This office cannot agree to leave the old bridge over the Little River in place when the new bridge is completed for the following reasons:
⅜ ¡fc ⅝ ⅜ ⅝ ⅜!
3) The new structure will provide a 40'-0" full shoulder width roadway, with 8'-0" shoulders. The outside shoulder should be adequate for all pedestrian traffic.
(Emphasis our own.)
The State contends that the old bridge was also designed for vehicular use, but the new bridge provided much wider travel lanes and shoulders. Testimony .and evidence presented at trial reveals that the old bridge, although constructed with high railings, also presented a hazardous condition to pedestrians. The fact that the new bridge may have been less hazardous or hazardous in a different way does not alleviate the State’s duty to maintain State highways in a reasonably safe condition.
It is uncontested that the new Little River Bridge was designed and constructed for vehicular traffic. The record reflects that specifications for railings differ with vehicular traffic and pedestrian traffic. The plans for the new Little River Bridge called for 2'-8" high railings, consistent with national standards for traffic railings. Both plaintiffs’ and defendant’s expert witnesses testified that the national standard for pedestrian railings is 3'-6". Defendant’s expert witness opined that the standard for pedestrian railings at the time the bridge was constructed, required a minimum height of 3'. The trial court correctly concluded that the 2'-8" railing was inadequate to protect pedestrians who use the bridge and thus a violation of the duty owed to pedestrians. It is true that the accident might have occurred had the railing been higher. However, it is also true that the accident might not have happened had the railing been higher.
“The mere possibility that the accident
would have occurred despite the required precautions does not break the chain of causation.”
Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, 304 (1962). We find that the plaintiffs proved that the inadequate railing created an unreasonably dangerous condition and was a cause-in-fact of the decedent’s accident.
Accordingly, under the standard enunciated in Deville v. La. Dept. of Transp. & Dev., supra, we find that the DOTD breached its duty in not maintaining the new bridge in a reasonably safe condition, and is therefore liable under either a strict liability or negligence theory.
*1298 APPORTIONMENT OF FAULT
La.C.C. 2323 provides that:
“When contributory negligence is applicable to a claim fbr damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.”
The guidelines to assist in the determination of percentages of fault are provided by the Louisiana Supreme Court as follows:
“in assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including, (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.”
Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, at 974 (La. 1985).
Apportionment of fault is a factual matter. The trial court’s findings should not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672 (La.App. 3 Cir.1991); Baugh v. Redmond, 565 So.2d 953 (La.App. 2 Cir. 1990); Central La. Electric Company v. Cox Construction Co., Inc., 471 So.2d 1117 (La.App. 3 Cir.1985). The trial court found the DOTD to be 60% at fault in the death of Keith W. Cay.
After reviewing the record, it is apparent that fault was correctly apportioned. The DOTD breached its duty to pedestrians it knew or should have known were using the new Little River Bridge. Its failure to provide a safe pedestrian crossing created an unreasonable danger to the pedestrians. The testimony of both experts was that the railings were of insufficient height to protect pedestrians. Had the railing been higher, the decedent might have been able to avoid the accident. Decedent was at fault in being legally intoxicated at the time of his death, as indicated by the testimony of the forensic pathologist, which impaired his mental and physical capacities, and in walking at night in dark clothing on the wrong side of the highway in violation of R.S. 32:216(B). Further, testimony reveals that the decedent was familiar with the area, hunting there often and walking home. Although contradicted, testimony in the record indicated that the decedent may have been aware of the danger of crossing the new Little River Bridge on foot. Considering apportionment of fault in light of the Watson guidelines, we find that the trial court’s finding of fault is not manifestly erroneous.
QUANTUM OF DAMAGES
The plaintiffs argue that the damage award for wrongful death and loss of support in the amount of $336,515.00 is insufficient. Plaintiffs argue that the trial court did not articulate its analysis for its award and the appellate court should therefore, look to prior awards to determine the proper amount of damages, citing Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991) as their authority. This is not the holding of that case.
Use of prior awards as a yardstick against which to measure damages has been expressly disapproved by our courts.
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case.
⅛! * * * *
*1299 The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the trial court....
[[Image here]]
Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s much3 discretion,’ La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Winston Industries, Inc., 341 So.2d 332 (La.1977) ] for purposes of then determining what would be an appropriate award for the present case.
Reck v. Stevens, 373 So.2d 498, 501 (La. 1979).
Upon reviewing the record in its entirety, we find that the trial court did not abuse its discretion in the award of damages.
CONCLUSION
We find no error in the trial court’s determination of liability, apportionment of fault or award of damages. Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the defendant-appellant.
AFFIRMED.