631 So.2d 393 (1994)
James C. CAY, Jr. and Annie Ruth Mott Cay
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 93-C-0887.
Supreme Court of Louisiana.
January 14, 1994.
Rehearing Denied February 24, 1994.
*394 Richard P. Ieyoub, Atty. Gen., New Orleans, David E. Lafargue, Marksville, for applicant.
Virgil R. Purvis, Jr., Jonesville, for respondent.
LEMMON, Justice.[*]
This is a wrongful death action filed by the parents of Keith Cay, who was killed in a fall from a bridge constructed and maintained by the Department of Transportation and Development (DOTD). The principal issues are (1) whether plaintiffs proved that DOTD's construction of the bridge railing at a height lower than the minimum standard for pedestrian traffic was a cause-in-fact of Cay's fall from the bridge, and (2) if so, whether Cay's fall was a risk that was within the scope of DOTD's duty to construct a higher railing.

Facts
Cay, a twenty-seven year-old single offshore worker, returned to his home in Sandy Lake from a seven-day work shift on November 3, 1987. Later that afternoon his sister drove him to Jonesville, thirteen miles from his home, to obtain a hunting license and shotgun shells for a hunting trip the next day. Cay cashed a check for $60.00 and paid for the hunting items, but remained in Jonesville when his sister returned to Sandy Lake about 7:00 p.m. Around 10:00 p.m. Cay entered a barroom and stayed until about 11:00 p.m., when he left the barroom on foot after declining an offer for a ride to his home. He carried an opened beer with him.
Five days later, Cay's body was discovered on a rock bank of the Little River, thirty-five feet below the bridge across the river. Cay would have had to cross the bridge in order to travel from Jonesville to his home.
Cay's body was found in a thicket of brambles and brush. The broken brush above the body and the lack of a path through the brush at ground level indicated that Cay had fallen from the bridge. There was no evidence suggesting suicide or foul play.[1] There was evidence, however, that Cay, who was wearing dark clothes, was walking on the wrong side of the road for pedestrian traffic and was intoxicated.[2]
The bridge, built in 1978, was forty feet wide, with two twelve-foot lanes of travel and an eight-foot shoulder on each side. The side railings were thirty-two inches high, the minimum height under existing standards for bridges designed for vehicular traffic. There were no curbs, sidewalks or separate railings for pedestrian traffic, although it was well known that many pedestrians had used the old bridge to cross the river to communities and recreation areas on the other side.[3]
*395 Cay's parents filed this action against DOTD, seeking recovery on the basis that the guard railings on the sides of the bridge were too low and therefore unsafe for pedestrians whom DOTD knew were using the bridge and that DOTD failed to provide pedestrian walkways or signs warning pedestrians about the hazardous conditions.
The trial court rendered judgment for plaintiffs, concluding that Cay accidently fell from the bridge. The court held that the fall was caused in part by the inadequate railing and in part by Cay's intoxicated condition. Pointing out that DOTD had closed the old bridge to both vehicular and pedestrian traffic and should have been aware that numerous pedestrians would use the new bridge to reach a recreational park, the Trinity community and other points across the river from Jonesville, the court found that DOTD breached its duty to pedestrians by failing to build the side railings to a height of thirty-six inches, as required by the American Association of State Highway and Transportation Officials (AASHTO) standards for pedestrian railings.[4] The court concluded that this construction deficiency was a cause of the accident in that "a higher rail would have prevented the fall." Noting that there was no evidence establishing what actually caused the incident, the court surmised that Cay was "startled by oncoming traffic, moved quickly to avoid perceived danger, tripped over the low rail, lost his balance, and with nothing to prevent the fall, fell from the Little River Bridge." The court apportioned fault sixty percent to DOTD and forty percent to Cay.
The court of appeal affirmed. 614 So.2d 1293. The court concluded that the inadequate railing was a cause-in-fact of the accident, stating, "It is true that the accident might have occurred had the railing been higher. However, it is also true that the accident might not have happened had the railing been higher." The court further stated, "Had the railing been higher, the decedent might have been able to avoid the accident."
Because these statements are an incorrect articulation of the preponderance of the evidence standard for the plaintiffs' burden of proof in circumstantial evidence cases, we granted certiorari. 618 So.2d 415.

Burden of Proof
In a negligence action, the plaintiff has the burden of proving negligence and causation by a preponderance of the evidence. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not. Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972).
One critical issue in the present case is causation, and the entirety of the evidence bearing on that issue is circumstantial. For the plaintiff to prevail in this type of case, the inferences drawn from the circumstantial evidence must establish all the necessary elements of a negligence action, including causation, and the plaintiff must sustain the burden of proving that the injuries were more likely than not the result of the particular defendant's negligence. Cangelosi v. Our Lady of the Lake Regional Medical Ctr., 564 So.2d 654 (La.1990) (on rehearing); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 39 (5th ed. 1984). The plaintiff must present evidence of circumstances surrounding the incident from which the factfinder may reasonably conclude that the particular defendant's negligence caused the plaintiff's injuries. Id.

Cause-in-Fact
Cause-in-fact is the initial inquiry in a duty-risk analysis. Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970). Cause-in-fact is usually a "but for" inquiry which tests whether the injury would not have occurred but for the defendant's substandard conduct. Fowler v. Roberts, 556 So.2d 1 (La.1989). The cause-in-fact issue is *396 usually a jury question unless reasonable minds could not differ. Id.
The principal negligence attributed to DOTD in the present case is the failure to build the bridge railings to the height required in the AASHTO standards. The causation inquiry is whether that failure caused Cay's fall or, conversely, whether the fall would have been prevented if DOTD had constructed the railing at least thirty-six inches high.[5]
The determination of whether a higher railing would have prevented Cay's fall depends on how the accident occurred. Plaintiffs had the burden to prove that a higher railing would have prevented Cay's fall in the manner in which the accident occurred.
The bridge is shown in the following photograph:

Two civil engineers testified as expert witnesses regarding the design and safety of the bridge for pedestrian use. DOTD's expert, Dr. Olan Dart, stated that the bridge was designed for vehicular use and met all safety standards for vehicular traffic, but that the design did not prohibit pedestrian use or pose an unreasonable risk or hazard to pedestrians. He stated without explanation that a pedestrian railing is not required for this particular bridge. Dart concluded that the eight-foot shoulders provided sufficient space for pedestrians to cross the bridge safely and indicated that pedestrians who were crossing the bridge in a normal manner would not likely fall from the bridge. He noted that the alcohol-impaired victim was crossing on the wrong side of the road while wearing dark clothing and carrying no flashlight. Dart speculated as to Cay's jumping, being pushed and other possible causes of the accident, finally suggesting that a vehicle approaching Cay from the rear may have frightened him with lights or a horn, causing him to move toward the rail and fall over. He stated that he could not determine exactly how the accident occurred, but noted that a pedestrian would have to approach the rail at a sharp angle to fall over the side.
Plaintiffs' expert, Larry Jones of H & H Engineering, testified that the bridge was designed solely for vehicular use and was clearly hazardous for pedestrians. According to Jones, the low railing was insufficient to protect pedestrians who might stumble and fall against the railing, since the fortytwo-inch minimum height standard is designed *397 to keep the top of the railing above the center of gravity of an average person and thereby prevent a fall over the railing. Jones stated that this railing's New Jersey parapet design, which has a three-inch high vertical base that projects nine inches into the shoulder and slopes upward and inward to the top of the railing, was intended to protect vehicular traffic,[6] but presents a stumbling hazard for pedestrians who, upon hitting the toe area, would fall nine more inches before hitting the top of the rail. He opined that a bridge intended for pedestrian use should have curbs and a sidewalk with railings of adequate height, noting that shoulders are primarily designed for emergency use by vehicles. Jones further observed that the bridge lacked any type of barrier or signs which should be utilized to prohibit pedestrian traffic on bridges which are not intended for pedestrian use.
The circumstantial evidence did not establish the exact cause of Cay's fall from the bridge, but it is more likely than not that Cay's going over the side was not intentional, either on his part or of the part of a third party. More probably than not, Cay did not commit suicide, as evidence of plans and preparation for a hunting trip minimize this possibility. More probably than not, he was not pushed, as he had little money or valuables on his person, and the evidence from barroom patrons does not suggest any hostility toward or by him during the evening. More likely than not, he was not struck by a vehicle and knocked over the railing. It is therefore most likely that he accidently fell over the railing.
The evidence suggests that Cay moved at a sharp angle toward the railing, for some unknown reason, and stumbled over. For purposes of the cause-in-fact analysis, it matters little whether his movement toward the railing was prompted by perceived danger of an approaching automobile or by staggering in an intoxicated condition or for some other reason. Whatever the cause of Cay's movement toward the railing at a sharp angle, the cause-in-fact inquiry is whether a higher railing would have prevented the accidental fall.
The trial judge's finding that a higher railing would have prevented the fall is supported by expert testimony that the very reason for the minimum height requirement for railing on bridges intended for pedestrian use is to have a railing above the center of gravity of most persons using the bridge so that the users will not fall over. The fact that DOTD built the railing lower than the minimum requirement is accentuated by the following photograph of an adult standing next to the railing:
*398 
A cause-in-fact determination is one of fact on which appellate courts must accord great deference to the trial court. We cannot say that the trial court erred manifestly in determining that a railing built to AASHTO minimum specifications would have prevented Cay's fall when he approached the railing at a sharp angle, although the exact cause of Cay's approaching the railing at a sharp angle is not known. While a higher rail would not have prevented Cay from jumping or a third party from throwing Cay over the rail, one could reasonably conclude that a rail above Cay's center of gravity would have prevented an accidental fall. The absence of a higher railing materially increased the risk and was a substantial factor in DOTD's failure to prevent Cay's accidental fall.

Duty
The next inquiry in the duty-risk analysis is whether there was a duty imposed by statute or rule of law on DOTD to construct a bridge that provided adequate safety for pedestrians who were expected to cross the Little River Bridge. DOTD knew that there would be considerable pedestrian traffic on the bridge, and DOTD clearly had the duty to construct railings of sufficient height to provide safe crossing for pedestrians or to prohibit pedestrian traffic by signs or access limitations.

Breach of Duty
The third inquiry involves breach of the duty. The height of the railing constructed by DOTD was below the minimum safety standard for bridges intended for pedestrian use. This construction deficiency constituted a breach of DOTD's duty.
DOTD argues, however, that the wide shoulder on the bridge fulfilled its duty to provide safe crossing for pedestrians. The wide shoulder provided additional safety from the danger of being hit by automobiles, but did little to lessen the risk of an accidental fall over the railing by a pedestrian walking as far as possible from vehicular traffic.
*399 We conclude that the wide shoulder bears more on Cay's contributory negligence than on DOTD's fulfillment of duty.

Scope of Duty
The critical inquiry in the dutyrisk analysis is whether the risk of the injury sustained by Cay was within the ambit of the duty imposed on DOTD. The duty to build a bridge railing higher than the center of gravity of most pedestrians is designed to prevent the risk that a pedestrian will accidently stumble and fall over a low railing. However, there must be an ease of association between the injury and the rule of law giving rise to the duty. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Here, the general manner of harm was foreseeable. The fact that the precise manner of harm (an intoxicated person's staggering or being frightened toward a bridge railing) may not have been anticipated does not break the claim of causation. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 43 (5th ed. 1984). There is an ease of association between an accidental fall over the railing of a bridge and the failure to build the railing to a height above an average person's center of gravity.
In summary, DOTD built a new bridge in 1978 with the knowledge that pedestrians were going to use the bridge and the knowledge that AASHTO standards required a minimum height for railings on bridges to be used by pedestrians, and DOTD simply failed to build the bridge in accordance with those minimum standards, a failure which was a cause-in-fact of the accidental fall. Accordingly, DOTD's concurrent fault in causing the accident renders DOTD liable for plaintiffs' damages, subject to a reduction for contributory negligence.

Contributory Negligence
The evidence established that Cay was intoxicated and was wearing dark clothes at the time of his death which, more probably than not, occurred during darkness, within a few hours after he left the barroom. The position of his body below the bridge indicates that he was improperly walking with traffic approaching from his rear (since he was probably crossing in the direction from Jonesville to Trinity).
Cay's voluntary intoxication and his negligence in following rules for pedestrian travel at night were significant factors in his fall. While DOTD had a duty to protect intoxicated or careless pedestrians who stumbled into the bridge railing from falling off the bridge, Cay's fault was far greater in causing this accident. The degree of the risk created by Cay's conduct and his far superior capacity to avoid the accident require that a much higher degree of blame be attributed to him in the causation of this accident. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985).
We conclude that the trial judge erred manifestly in allocating sixty percent of the fault to DOTD. Accordingly, we amend the judgment to quantify Cay's fault at ninety percent and DOTD's fault at ten percent.

Decree
For these reasons, the judgments of the lower courts are amended, and the comparative fault of Keith Cay is fixed at ninety percent, while the fault of the Department of Transportation and Development is fixed at ten percent. As amended, the judgment is affirmed.
DENNIS, J., concurs in part, dissents in part, and would affirm the judgments below for the reasons assigned by the Court of Appeal.
ORTIQUE, J., concurs in part, dissents in part, with reasons.
ORTIQUE, Justice, concurring in part, dissenting in part.
The majority correctly holds that DOTD breached its duty to construct the Little River Bridge in a manner that was safe for pedestrian use and that DOTD's negligence was both a cause-in-fact and a legal cause of Keith Cay's death. However, the majority errs in the allocation of fault between the decedent and DOTD.
The majority points out that the evidence as to the circumstances surrounding Cay's fall from the bridge is purely circumstantial, as did the trial court. The trial court considered the evidence as a whole and allocated sixty percent (60%) of the fault to the DOTD. *400 The forty percent (40%) fault allocated to decedent was based upon the possibility that he was intoxicated and therefore impaired. The DOTD expert, Dr. George McCormick, II, a forensic pathologist, testified that a blood alcohol level of more than .10 may cause deficits in visual perception, deficits in fine motor abilities, slurred speech, staggered gait and an inability to perform coordinated motor movement. Dr. McCormick also testified that the effects of the consumption of alcohol are dependent upon a consumer's predisposition for alcohol. According to Dr. McCormick, it was impossible to determine with exactitude what portion of the alcohol found in Keith Cay's body was due solely to decomposition of the body of more than two days' duration or whether the alcohol content was the result of consumption of alcohol prior to his death.[1]
The majority amended the portion of the trial court judgment allocating fault between the parties, finding that the trial court was manifestly erroneous in allocating sixty percent (60%) of the fault to the DOTD. According to the majority, "Cay's fault was far greater in causing this accident," and that "the degree of risk created by his conduct and his `far superior' capacity to avoid the accident require that a much higher degree of blame be attributed to him in the causation of the accident." However, the DOTD, in my view, had a far superior capacity to avoid the accident or make its occurrence less likely by constructing a bridge that was safe for pedestrian use. Unlike the evidence of Cay's comparative fault, the DOTD's capacity is not based upon circumstantial evidence. The DOTD had knowledge early on during construction of the bridge that pedestrian usage of the new bridge would occur; likewise the DOTD had adequate time to remedy the "defect" by making a plan change prior to the completion of construction or by providing for pedestrian safety between 1978, (when the bridge was constructed), and 1987.[2]Sinitier vs. Lavergne, 391 So.2d 821 (La.1980). How can one say that the decedent had a greater responsibility than the State, when we should expect the State to construct safe bridges or to correct defects when they become known to the State?
In view of the uncertainty as to the degree of Cay's impairment, and the DOTD's capacity to correct the defect, I respectfully dissent to the majority's allocation of fault.
I find no manifest error in the judgment of the trial court. The majority opinion fails to state with clarity or resoluteness the basis for its conclusion regarding the application of the appropriate standard of review.
This court has left no doubt that reversing a trial court's reasonable conclusions of fact must be based upon acceptable standards. With both clarity and resoluteness we are instructed:
A court of appeal may not set aside a trial court's or jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring, 283 So.2d 716 (La.1973); Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998 (La.1978).
In this same vein, this court has repeatedly declared that where the fact-finder has selected between two reasonable postulates, based upon the evidence available, that selection can virtually never be manifestly erroneous or clearly wrong. Rosell, supra; Arceneaux, *401 supra; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
For these reasons, I respectfully dissent.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Watson, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] The fact that Cay bought a hunting license and supplies militates against a conclusion that he planned to commit suicide.
[2] The forensic pathologist who performed the autopsy testified that Cay's blood alcohol content at the time of his death was high enough to impair his motor skills, visual perception and ability to react.
[3] The Town of Jonesville requested that DOTD maintain the old bridge for pedestrian traffic, but DOTD eventually barricaded that bridge and prohibited all uses, announcing that the wide shoulders on the new bridge provided adequate safety for pedestrians.
[4] The preferred height at the time of construction was forty-two inches, which is AASHTO's present minimum standard and has been since 1983.
[5] Plaintiff contends that the applicable minimum standard is forty-two inches, the standard at the time of the accident, rather than the thirty-six-inch standard at the time of construction. We pretermit determination of that issue.
[6] If a vehicle hits the base of the parapet railing at the point nine inches from the vertical face, there is room for the bumper and side of the vehicle to clear the railing.
[1] Dr. McCormick's deposition testimony was entered in evidence at trial. This testimony may be found at pp. 22-27.
[2] September 6, 1977 letter from United States Coast Guard to the Deputy Assistant Secretary of the DOTD. Plaintiffs' Exhibit 10.