hARMSTRONG, Judge.
This is an appeal by the plaintiff in an automobile personal injury case. The plaintiff alleges that his pre-existing neck condition was aggravated by a minor rear-end collision. The bulk of the evidence consisted of testimony of various doctors. The jury, evidently concluding that the plaintiff had not proven such aggravation, found that the collision was not a proximate cause of any injuries of the plaintiff. The plaintiff argues on appeal that the jury was clearly wrong/manifestly erroneous as to the causation issue. The plaintiff also argues that the trial court erred by denying his motion in limine which sought to exclude certain evidence of a disability application and of certain other litigation in which the plaintiff was involved. We see no error as to any of these issues and so we affirm.
On March 22, 1993, plaintiff Wayne Cen-tanni was driving in traffic in downtown New Orleans. His car was followed by the car (which was a rental car) driven by defendant Wayne Spizer. Mr. Centanni stopped and the front of Mr. Spizer’s car struck the rear of Mr. Centanni’s car. Mr. Spizer testified that he Rwas driving quite slowly and that the front of his car “tapped” the rear of Mr. Centanni’s car. There was some damage, apparently minor, to the front of Mr. Spizer’s car but any damage to Mr. Centanni’s car, which was old and already somewhat battered, was “minuscule” or nonexistent. Immediately after the accident, Mr. Centanni, who is a private investigator, took photographic equipment out of his ear and photographed the scene. The day of the accident, Mr. Centanni’s lawyer contacted a doctor and arranged for Mr. Centanni to be seen at the attorney’s expense. Subsequently, Mr. Cen-tanni filed suit against Mr. Spizer and his insurer, State Farm.

Causation

Mr. Centanni, of course, had the burden of proving by a preponderance of the evidence that the accident caused him injury (in this case, by aggravating a pre-existing condition). See generally Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Mart v. Hill, 505 So.2d 1120 (La.1987). Causation is a factual issue to be determined by the jury. See, e.g., Cay v. DOTD, 631 So.2d 393 (La.1994); Elder v. Rowe, No. 94-CA-1599 (La.App. 4th Cir. 3/29/95), 653 So.2d 718. This factual determination of the jury may be disturbed upon appellate review only if it is clearly wrong or manifestly erroneous. E.g., Syrie v. Schilhab, No. 96-C-1027 (La.5/20/97), 693 So.2d 1173; Ambrose v. New Orleans Police Dept. Ambulance Service, No. 93-3099 (La.7/5/94), 639 So.2d 216; Stobart 3State, DOTD, 617 So.2d 880 (La.1993); Rosell v. *901 ESCO, 549 So.2d 840 (La.1989).[1]
Nine doctors plus a physical therapist testified as to their treatment and diagnoses of Mr. Centanni. Mr. Centanni points' out that all of them testified upon being called by him as witnesses and that the defendants did not call any witnesses. The defendants point out that they had subpoenaed all the medical witnesses and that Mr. Centanni’s counsel, realizing that all of the medical witnesses would be testifying, madfe the tactical decision to call all of them in his own case. Also, the medical witnesses all testified upon cross-examination by the defendants. Thus, no inference that the medical testimony was all favorable to Mr. Centanni, or unfavorable to the defendants, can be drawn from the fact that medical witnesses were all called by Mr. Centanni. In any event, the medical witnesses’ testimony is what it is, regardless of who called them as witnesses.
It would serve no purpose to detail all of the testimony of all of the medical witnesses. It is fair to say that several of them opined that the rear-end collision accident caused the pain and disability and necessitated the treatment and surgery which post-dated the accident, but that they qualified their opinions on cross-examination. For example, Dr. David M. Jarrott opined that it was “most-likely” that the accident caused cervical disc herniation and those of Mr. Centanni’s symptoms which post-dated the accident. However, on cross-examination, it was revealed that Dr. Jarrott relied upon a history given by Mr. Centanni of having been rear-ended at 25 miles per hour rather than the much less severe collision described in the testimony of Mr. Spizer. Also, Dr. Jarrott had not received from |4Mr. Centanni a complete history of his many years of treatment by doctors and chiropractors for neck pain and other symptoms. Dr. Jarrott agreed that such facts could affect his opinion as to the cause of Mr. Centanni’s symptoms. Also for example, Dr. Edna Doyle, who had treated Mr. Centanni from 1988 to 1989, but then did not see him again until February 1994 opined that the accident was the cause of Mr. Cen-tanni’s symptoms in 1994.- But, on cross-examination, it was shown that she was not aware that, from the time she had last seen Mr. Centanni in 1989, until the 1993 accident, Mr. Centanni was seeing a chiropractor frequently for treatment of neck pain and other symptoms.
There also was extensive testimony that Mr. Centanni’s neck already was a source of great pain and other symptoms at the time of ■the accident and had been for many years. For example, Dr. Byram had treated Mr. Centanni for back problems since the 1970’s. In 1987, he treated Mr. Centanni for neck problems and Mr. Centanni requested that he fill out disability benefit forms due to neck and back problems. Also for example, Dr. Provance testified that, prior to the accident, Mr. Centanni was on a “roller coaster” of neck pain and other symptoms from at least 1987. He was treating Mr. Centanni on a periodic basis prior to the accident and, in fact, had treated him for neck pain one week before the accident. Similarly, Dr. Hamsa saw Mr. Centanni about two years before the accident and, at that time, believed that Mr. Centanni would need the very neck surgery which he eventually underwent after the accident.
An MRI taken in 1993, some months after the accident, showed disc herniation in Mr. Centanni’s neck. There was also an MRI taken in 1988 which did not show any such disc herniation. But, because of the gap of about five years' between the 1988 MRI and the date of the accident, the MRIs do not show that the |5disc herniation necessarily or probably resulted from the accident. In fact, Dr. Hamsa had seen signs of disc herniation prior to the date of the accident. Dr. Doyle and Dr. Jarrott testified that there was no way to know whether the accident caused the disc herniation. Dr. Provance diagnosed Mr. Centanni as suffering from degenerative disc disease long before the accident.
In sum, there was medical testimony supporting each party’s contentions as to causa *902 tion. The jury reasonably could have concluded that the pain and symptoms that Mr. Centanni suffered from after the accident were simply a continuation of those from which he had suffered prior to the accident and that his medical condition was not worsened by the accident. Thus, we may not hold that the jury was clearly wrong or manifestly erroneous in the finding that the accident was not a proximate cause of any injuries to Mr. Centanni.

Jury Trial

Mr. Centanni argues that the trial court erred by failing to strike the jury. Mr. Centanni’s motion to strike the jury was filed after the pretrial order’s deadline for motions and, consequently, the trial court denied it as untimely.
The answer filed in response to Mr. Centanni’s original petition requested a jury but no form of jury order was submitted and the jury fee was not paid. Later, Mr. Cen-tanni filed a supplemental and amending petition and the answer to it included a request for jury trial and was accompanied by a form of jury order and the jury fee. Mr. Centan-ni’s motion to strike the jury was based on the proposition that the supplemental and amending petition was not substantive in that it merely corrected the name of State Farm and that, therefore, the defendants’ failure to comply with the requirements for requesting a jury within ten days of thejspriginal petition was fatal. See La.Code Civ. Proc. art. 1733.C. However, the supplemental and amending petition did not merely correct the name of State Farm. Instead, it also added allegations as to coverage and solidary liability. Thus, the second request for a jury trial, the request which was done properly, was filed not later than ten days after service of the last pleading directed to an issue triable by jury. Thus, Mr. Centanni’s motion to strike the jury was without merit.
Consequently, we need not address whether the trial court should have considered on the merits the motion to strike as, even if the motion to strike was considered on the merits, it should have been denied.

Motions In Limine

Mr. Centanni argues on appeal that the trial court erred in denying his motion in limine and in admitting evidence of certain litigation in which Mr. Centanni had been involved.
Mr. Centanni, who was a reserve deputy of the Jefferson Parish Sheriffs Office, was sued by Saints Football player Brian Forde who alleged that he was beaten by Mr. Centanni during the course of an arrest. Apparently, Mr. Centanni was cast in judgment for a large amount in that case. Mr. Centanni argues that this evidence clearly was prejudicial and tended to make Mr. Cen-tanni appear to be a bad person. But, the defendants argue that Mr. Centanni’s claims against them included claims for emotional distress and psychological trauma and that much or all of Mr. Centanni’s emotional and psychological distress was caused by the Brian Forde lawsuit rather than the accident. Mr. Centanni’s psychiatrist, Dr. Escalada, testified that the Brian Forde litigation was a large source of stress for Mr. Centanni and contributed to Mr. Centanni’s neck pain. Thus, there was Lmedical testimony supporting the relevance of the Brian Forde litigation to Mr. Centanni’s claims in this ease.
.Apparently as a result of a large judgment against Mr. Centanni in the Brian Forde litigation, and the absence of any judgment against Sheriff Lee, Mr. Centanni filed a petition initiating a lawsuit against Sheriff Lee. Mr. Centanni argues that evidence of this petition also was prejudicial because it too brought up the Brian Forde litigation and, again, made Mr. Centanni appear to be a bad person. However, the defendants point out that, in Mr. Centanni’s petition in his suit against Sheriff Lee, Mr. Centanni alleged mental anguish, loss of business and loss of personal and business reputation as a result of the Brian Forde litigation. Thus, the defendants argue that Mr. Centanni’s petition against Sheriff Lee is relevant, in terms of causation and damages, to Mr. Cen-tanni’s claims against them for emotional distress and loss of earning capacity.
Mr. Centanni also complains that the trial court erred by admitting evidence of a disability insurance application which was com *903 pleted but not submitted. The defendants argue that the disability insurance application was evidence that Mr. Centanni had disability which was unrelated to the accident. The form was completed partly by Mr. Centanni, partly by a Dr. Weiner and partly by Dr. Escalada, and describes various reasons, other than the accident, for Mr. Cen-tanni’s disability. Thus, it does appear that the application was probative as to damages and causation.
Evidence is “relevant” if it has “any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La.Code Evid. art. 401. For |sthe reasons discussed above, the evidence of which Mr. Centanni complains was clearly “relevant.”
However, even relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.” La.Code Evid. art. 403. Mr. Centan-ni argues that the evidence of the Brian Forde litigation, including his own lawsuit against Sheriff Lee, as well as the evidence that he had disability insurance was so prejudicial that it should have been excluded under Article 403. However, the probative value of the evidence was considerable. In that regard, we note that the evidence was connected to the medical testimony in that Dr. Escalada testified that the Brian Forde litigation was a major cause of Mr. Centanni’s problems and in that Dr. Escalada, and another doctor, completed parts of the disability application. There were, therefore, good reasons to admit the evidence, despite the possibility of some danger of prejudice, and there was no abuse of discretion by the trial court in deciding to admit it.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. We also note that the rule of Housley v. Cerise, 579 So.2d 973 (La.1991), which deals with proof of causation when a plaintiff is asymptomatic prior to an accident but then develops symptoms immediately after the accident, is not applicable in this case because, as will be discussed below, Mr. Centanni had symptoms prior to the accident.