587 So.2d 755 (1991)
Kenneth Layton HOOD and Sara Jo Hood, Appellees/Appellants,
v.
STATE of Louisiana Through the DEPARTMENT of TRANSPORTATION and DEVELOPMENT, et al.
Ronald W. GANTT, as Administrator of the Estate of the Minor Child, Gary Don Gantt, Appellee/Appellant,
v.
STATE of Louisiana, Through the DEPARTMENT of TRANSPORTATION and DEVELOPMENT, et al.
Nos. 22751-CA, 22752-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1991.
Writ Denied December 13, 1991.
*757 Scott J. Crichton, William Paul Lawrence, Jr., Shreveport, for Kenneth Layton Hood and Sara Jo Hood.
Tommy J. Johnson, Shreveport, for Ronald W. Gantt, as Adm. for the Estate of the minor child, Gary Don Gantt.
Frank H. Thaxton, Claude Bookter, Jr., Shreveport, for Safeco Ins. Co.
Eskridge E. Smith, Jr., Shreveport, for Capital Enterprise Ins. Co. and Ronald W. Gantt, et ux.
James M. Johnson, Minden, for State of La., through the Dept. of Transp. and Development.
Before LINDSAY, VICTORY and STEWART, JJ.
VICTORY, Judge.
These consolidated suits arise out of a single vehicle accident which occurred on Highway 146 in Claiborne Parish. Anthony Gantt was operating his father's truck when it strayed from the roadway, encountered a shoulder drop-off condition, and subsequently overturned. Gary Don Gantt and Joel Hood were passengers. As a result of the accident, Joel died instantly and Gary suffered serious injuries. The trial court found the State of Louisiana, through the Department of Transportation and Development (DOTD) the sole cause of the injuries sustained. DOTD appeals the issues of liability and damages. We affirm in part and reverse in part.

*758 FACTS
The accident occurred the morning of July 12, 1985 on Louisiana Highway 146 approximately 6.9 miles east of Homer in Claiborne Parish. Anthony Gantt (age 15) was driving his father's 1983 Chevrolet S-10 pickup truck accompanied by his brother, Gary Don Gantt (age 10), and his friend, Joel Hood (age 13). Traveling west at approximately 55 m.p.h., Anthony took his eyes off the road to look down at his sweaty shirt when Gary and Joel began teasing him about it. While Anthony was looking down, the truck went completely off the paved roadway onto the shoulder. Anthony immediately took his foot off the accelerator and traveled approximately 189 feet before he attempted to return to his lane of traffic. Upon reentry, his left tires began scrubbing against a four-inch drop-off between the shoulder and pavement, causing the truck to "sling-shot" across the road into the oncoming lane of traffic. As Anthony compensated by steering back to the right, the truck skidded 63 feet before it rolled over. The truck overturned several times, ejecting both Gary and Joel.
The Gantts filed a tort action against DOTD claiming that its negligent maintenance of the road caused Gary's injuries. The Hoods, as surviving parents of Joel Hood, filed a wrongful death action against DOTD, the Gantts, and Capital Insurance Company (the Gantts' liability insurer). The Hoods also sought recovery from Safeco Insurance Company based on their uninsured motorist coverage. DOTD subsequently made the Gantts a third party defendant, claiming Anthony Gantt was solely at fault. In addition, various other cross-claims and incidental demands were filed.
Following bifurcated trials on the issues of liability and damages, the trial court found DOTD 100% at fault and awarded judgment in the amounts of $1,635,798.87 to Gary Don Gantt's parents for his damages, and $363,206.76 to the Hoods for Joel's wrongful death.
DOTD suspensively appeals, claiming the trial court erred (1) in finding the State liable, (2) in failing to find Anthony Gantt contributorily negligent, (3) in awarding excessive wrongful death damages to the Hoods, (4) in awarding excessive future loss of earnings and general damages to Gary Don Gantt, (5) in awarding Gary Don Gantt excessive general damages in violation of LSA-R.S. 13:5106(B)(1), and (6) in awarding excessive interest contrary to LSA-R.S. 13:5112(C).
The Hoods have also appealed, although they contend the trial court decision is correct, arguing that if Anthony Gantt is found partially liable for the accident, their rights against Gantt should be protected.

LIABILITY OF DOTD
DOTD contends that the trial court erred when it found DOTD negligent in its maintenance of Highway 146. We find no error.
DOTD has the duty to keep all state owned or state maintained highways and their shoulders in a reasonably safe condition. This duty encompasses the obligation to protect a motorist who intentionally or unintentionally drives onto the shoulder. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979). Although DOTD is not an insurer of safety, it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Coleman v. State, Department of Transportation and Development, 524 So.2d 1281, 1284 (La.App. 3d Cir.1988); Rochelle v. State, Department of Transportation and Development, 570 So.2d 13 (La. App. 3d Cir.1990), writ denied 572 So.2d 93 (La.1991).
To recover upon the basis of negligence, it was incumbent upon the plaintiffs to prove DOTD knew, or should have known, of the hazardous condition prior to the accident. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). DOTD may also be held strictly liable under LSA-C.C. Art. 2317 as custodian of a defective shoulder in normal use. Under both a negligence and strict liability theory, the duty imposed on DOTD is the same. However, under a strict liability theory, the plaintiff is relieved of the burden of proving DOTD's *759 knowledge of the defect. Kent v. Gulf States Utility Co., 418 So.2d 493 (La.1982).
The trial court found DOTD liable under both theories of liability. Since the lower court found that DOTD had knowledge of the shoulder condition, we will simply address DOTD's liability on the basis of negligence.
The record reveals substantial evidence supporting the district court's finding that there was "at least a four-inch drop-off between the paved portion of the road and the dirt shoulder" at the scene of the accident. All of plaintiff's witnesses, including a neighbor who knew none of the parties involved, testified that a drop-off existed. These five people were the only ones to inspect the scene on the day of the accident other than Trooper Campbell, who testified he saw no significant drop-off worth reporting. Upon cross-examination he testified that he would not consider a drop-off significant unless it were five, six, or seven inches. The record clearly supports the trial court's holding that the drop-off existed.
Courts have consistently held that an abrupt drop-off between a roadway and a shoulder constitutes a defect. LeBlanc v. State, Department of Highways, 419 So.2d 853 (La.1982); Grappe v. State, Department of Transportation and Development, 462 So.2d 1337 (La.App. 3d Cir.1985), writ denied 466 So.2d 1302 (La.1985). An implicit necessity for the use of a shoulder is a connection between the roadway and the shoulder that allows for safe, gradual movement from one to the other. Sinitiere v. Lavergne, supra. We agree with the trial court's conclusion that a drop-off of at least four inches makes the shoulder unreasonably dangerous to normal use.
The trial court also found that DOTD was actually aware of the hazardous condition and failed to take corrective action within a reasonable time. The record supports his conclusion.
Although DOTD denies knowledge of any defect, the Parish Superintendent, James Martin, had previously scheduled repair work at the accident site for Monday, July 15, 1985, three days after the accident. Bobby Moorehead, DOTD Maintenance Specialist, testified that the roads and shoulders in that area were inspected bi-monthly and that any drop-off condition of three inches or more would be scheduled for repair, in accordance with department standards.
The lower court found the defect to be a cause in fact of the sling-shot effect as the truck reentered the highway. The trial court obviously placed great emphasis on the testimony of plaintiff's expert, Dr. John Glennon, who stated that the "scrubbing sling-shot" phenomenon is the only thing that could explain the vehicle's path on reentry. Causation is a question of fact determined by the trial court which is entitled to great weight and should not be disturbed absent manifest error. Rivet v. State, Through DOTD, 434 So.2d 436 (La. App. 3d Cir.1983). The record supports the conclusion that the defect was a cause of the accident.
DOTD's breach of its duty to maintain the shoulder in a reasonably safe manner encompassed the risk of this type accident and injury, making it liable for the damages caused by the defective shoulder. See Thomas v. Jackson, 442 So.2d 1186 (La. App. 2d Cir.1983), writ denied, 445 So.2d 435 (La.1984).

LIABILITY OF ANTHONY GANTT
The appellant, DOTD, argues that the trial court erred in finding the driver, Anthony Gantt, free of negligence. After carefully reviewing the record, we agree that the trial court clearly erred in failing to find that Gantt's actions in allowing the truck to leave the pavement constituted negligence.
The trial judge found that Gantt's inadvertent straying from the highway did not constitute negligence under Rue v. State, Department of Highways, supra. The supreme court in Rue held that inadvertent straying onto the shoulder did not constitute such substandard conduct as to bar a motorists recovery in a defective shoulder case.
Rue is no longer viable in light of the subsequent adoption of comparative fault. LSA-C.C. Art. 2323. We agree with the *760 reasoning of Judge (now Justice) Cole in Motton v. Travelers Insurance Co., 484 So.2d 816 (La.App. 1st Cir.1986):
[W]e believe one of the major reasons for the result reached in Rue was the harshness of the total bar to recovery which resulted from the application of contributory negligence. In order to avoid this harsh result, the Court concluded the conduct of the motorist in inadvertently straying off the road did not constitute negligence which would bar recovery. We believe the major policy considerations behind Rue were the same as in Baumgartner, i.e., to provide the State with an economic incentive to maintain highway shoulders in a safe condition and to place liability upon the State, whose conduct created a far greater risk of harm to others than did the motorist's conduct. Like the court in Turner, we believe these legitimate interests can now be accomplished by the application of comparative fault, which has the additional advantage of achieving a more equitable result, with each party bearing the burden of its proportionate degree of fault. Accordingly, the rule established in Rue is no longer necessary. For these reasons, we agree with the trial court's conclusion that such cases are now governed by the comparative fault doctrine of La.Civ.Code art. 2323.
This circuit recently adopted Justice Cole's view in Roberts v. State, Through DOTD, 576 So.2d 85, 90 (La.App. 2d Cir.1991), writ denied 581 So.2d 685 (La.1991). Since the advent of comparative negligence, a driver straying onto a defective shoulder has been found to be proportionally at fault in Rochelle v. State, Through DOTD, supra; Holmes v. State, Department of Highways, 466 So.2d 811 (La.App. 3d Cir.1985), writ denied 472 So.2d 31 (La.1985); Cashio v. State, Through DOTD, 518 So.2d 1063 (La.App. 1st Cir.1987); Motton v. Travelers Insurance Co., supra; and Roberts v. State, Through DOTD, supra.
Anthony Gantt was 15 years of age and licensed to drive only four months prior to the accident. He testified that the passengers were teasing him about his wet shirt immediately before he took his eyes off the road. Although testimony is conflicting as to the vehicle's exact path after it left the paved roadway, it is undisputed that all four tires were completely off the pavement. It is well settled that motorists have a duty both to maintain control of their vehicles and to maintain a proper lookout. McDaniel v. State, Department of Transportation, 398 So.2d 88 (La.App. 3d Cir. 1981), writ denied, 404 So.2d 277 (La.1981). We conclude that Gantt's conduct, in failing to maintain a proper lookout, and failing to keep his vehicle on the road and under control, amounted to negligence.
The trial court ruled that Gantt was not negligent in his attempt to reenter the highway, subsequent to his departure. The court found that Gantt attempted reentry because the shoulder was becoming more narrow and steeper. The court further found that Gantt acted properly in not using the brake or accelerator while on the shoulder. His reentry attempt was described at trial as a "fairly typical driver reaction" by Dr. Glennon, plaintiff's expert. The court's assessment of the method of reentry was based upon Gantt's testimony which was supported by expert testimony.
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it was "clearly wrong." Reasonable evaluation of expert and lay testimony will not be disturbed unless clearly wrong. Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir.1990), writ denied 573 So.2d 1135 (La 1991); Rosell v. ESCO, 549 So.2d 840 (La. 1989). The trial judge was not clearly wrong in holding that Anthony Gantt was not negligent after he left the pavement. However, he was manifestly erroneous in failing to hold him negligent in leaving the pavement under the facts presented.

APPORTIONMENT OF FAULT
Having found both DOTD and Anthony Gantt negligent, we must assign a percentage of fault to each. This apportionment is guided by the principles enunciated in Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985):

*761 "In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. [Quoting Uniform Comparative Fault Act 2(b) (1979).] In assessing the nature of the conduct of the parties various factors may influence the degree of fault assigned, including (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. And of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligence conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Anthony Gantt's inattention which caused him to leave the highway is the only act of negligence he committed. Based on evidence at trial, the lower court held he was not familiar with the condition of the shoulder of Highway 146. Under the circumstances of the narrowing shoulder and the risks as perceived by Gantt, his decision to reenter the highway was not negligent. As stated previously, his method of reentry was typical of any driver placed in this predicament.
On the other hand, DOTD was fully aware of the danger in failing to properly maintain the shoulders of the road. This portion of Highway 146 was inspected twice a month and repair work had even been scheduled to begin Monday, July 15, 1985, three days after the accident. The DOTD guideline manual, in effect at the time of the accident, stated that a drop-off which exceeded three inches in depth is a potential hazard and should be scheduled for repair immediately. The trial judge found that no repairs had been made at the accident site in over four years.
The risk created by leaving a four-inch drop-off unrepaired was great, as evidenced by the death of Joel Hood and the serious injuries of Gary Don Gantt. Thus, DOTD failed in their duty owed to the motorists of Highway 146.
After considering each of the factors set forth in Watson, we find Anthony Gantt 20% at fault and DOTD 80% at fault. See Rochelle v. State, Through DOTD, supra.

QUANTUM
The DOTD next assigns error to the quantum awarded by the trial court. The damages assessed are as follows:

 GARY DON GANTT
 Lost Future Income $ 622,643.00
 Past Medical Expenses 49,205.87
 Expenses for Rehabilitation 60,000.00
 Ophthalmological Corrective Surgery 3,700.00
 Loss of Vision 100,000.00
 Past and Future Physical/Mental Pain and Suffering/Loss of
 Quality of Life 800,000.00
 Property Damage (Deductible with Capital) 250.00
 _____________
 TOTAL DAMAGES $1,635,798.87
 JOEL HOOD
 Kenneth Hood (Father) Wrongful Death $ 175,000.00
 Sara Jo Hood (Mother) Wrongful Death 175,000.00
 Survival Action 7,500.00
 Funeral Expenses 5,706.76
 ____________
 TOTAL DAMAGES $ 363,206.76

*762 In order to disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). An abuse of discretion is only found when the award is so excessively high or low as to shock a reviewing court into the realization that it must correct the award. Hanzy v. Sam, 385 So.2d 355 (La. App. 1st Cir.1980), writ denied, 386 So.2d 357 (La.1980). Absent an initial determination of such an abuse, a reviewing court may not disturb the trial court's award. Wilson v. Magee, 367 So.2d 314 (La.1979).

GARY DON GANTT'S AWARD
Appellant only contests as excessive the damages awarded to Gary for (1) lost future income, (2) loss of vision, and (3) past and future physical/mental pain and suffering and loss of quality of life.

LOSS OF FUTURE EARNINGS
Dr. Mary Ellen Hayden, a neuropsychologist, and Dr. Richard Galloway, a certified rehabilitation counselor, each opined that Gary could, at best, reach a minimum wage job and would have difficulty remaining employed 50% of the time. In referring to Gary's severe brain injury, Dr. Hayden noted that he had tremendous difficulty with words and verbal information which severely impaired his comprehension of instructions. For this reason, Dr. Hayden found that Gary could never be employed in a supervisory capacity, which she felt he could have achieved prior to the accident. Dr. Galloway testified that before the accident Gary could have earned between $4.50 and $15.00 per hour, but after the accident he could only hope to earn a minimum wage of $5.00 per hour.
After allowing for taxes, inflation, discount rate, fringe benefits, and time not in the work force, Dr. Melvin Harju, an expert economist, found the present value of Gary's projected lost future earnings between $566,345.00 and $622,643.00. Although the state argues that the award was highly speculative due to Gantt's age, no alternative means for calculating this loss was presented.
The Louisiana Supreme Court in Folse v. Fakouri, 371 So.2d 1120, 1123 (La.1979) recognized that damages for loss of earnings should be based on the injured person's ability to earn rather than upon what he actually earned prior to the injury. A child injured in an accident should not be deprived of an award of lost future earnings simply because he was unemployed at the time of injury and cannot prove actual loss. See Roussel v. Berryhill, 444 So.2d 1286 (La.App. 5th Cir.1984), writ denied 447 So.2d 1081 (La.1984).
The trial court's award of the highest figure may not be modified unless it is unsupported by the record. Reck, supra; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App. 2d Cir.1985). Proof of loss of earnings is entitled to great weight when the testimony presented by the plaintiff is uncontradicted. See Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151, 156 (1971). Since the trial court's award for loss of earnings is supported by the record, it will not be disturbed on appeal.

GENERAL DAMAGES
Appellant also contends that the general damages awarded by the trial court are excessive. Particularly, DOTD questions the award of $100,000.00 for loss of vision, and $800,000.00 for past and future physical/mental pain and suffering, and loss of quality of life.
The evidence established that Gary has lost permanent vision in his left eye. Dr. James Ward, an opthamologist, noted that the loss of vision would affect Gary's depth perception.
The appellant cites several cases in support of his argument that the proper range of damages for this type injury is between $15,000.00 and $17,000.00. However, these cases all involve eye injuries which resulted only in a residual decrease in vision, or *763 which produced light sensitivity. Gary, on the other hand, suffers from a complete loss of vision in one eye.
In Landry v. State Farm Fire & Casualty Co., 504 So.2d 171 (La.App. 3d Cir. 1987), the Third Circuit awarded $225,000.00 for a loss of vision in plaintiff's right eye and reduced vision in his left eye. The court found that this plaintiff suffered retinal detachment in both eyes, as well as a loss of depth perception.
After carefully considering the evidence in the record, along with the jurisprudence, we do not believe the trial court's award of $100,000.00 for the complete loss of vision in one eye is an abuse of discretion.
Lastly, the appellant appeals as excessive the trial court's award of $800,000.00 for general pain and suffering and loss of quality of life.
The evidence establishes that Gary sustained permanent brain damage as a result of this accident. In response to Gary's deteriorating condition, surgery was recommended by Dr. Donald Smith, a neurosurgeon, in order to remove a blood clot from the left temporal region of his brain. A certain amount of the macerated brain was also removed, which ultimately affected Gary's ability to speak, his ability to understand verbal information, and his ability to comprehend written words. Gary remained in the hospital for 22 days before returning home to a highly supervised environment.
After being "home schooled" for four months, Gary returned to his elementary school where he was placed in special educational classes. Gary's teacher testified that he had tremendous difficulty with words and verbal information and that his verbal memory was severely impaired, all of which was later confirmed by Dr. Hayden. Gary's parents testified to his moody behavior, short temper, and heightened frustration experienced due to his realized deficiencies, both scholastically and socially. Dr. Hayden explained that Gary will have a chronic sense of discouragement and dejection, and that his IQ had dropped from 120 to 85. Even though Gary's performance IQ was somewhat higher than his verbal IQ, Dr. Hayden found that overall he borders on the mentally retarded range. She concluded that Gary will not finish high school without significant psychological scars and will never be able to attend college. Drawn from her experience with head injured victims, Dr. Hayden testified that the likelihood of Gary marrying and having children is "very, very low."
Before altering a general damage award on appeal, the record must show a clear abuse of the trial court's much discretion. The initial inquiry must be directed at the particular injuries and their effects on the injured person. Only after a determination of abuse has been reached, may the court resort to prior awards in order to determine an appropriate award. Reck v. Stevens, supra.
After careful review of the evidence, we find the general damage award is not so high as to amount to an abuse of discretion. Even though awards in other cases provide no scale of uniformity for personal injuries, they do serve as a guide as to whether the present award is so greatly disproportionate as to amount to an abuse of discretion.
The trial judge cited Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985), writs denied 468 So.2d 1203, 1205 (La.1985) as authority for his general damage award of $800,000.00. In Capone, a girl in her earlier twenties suffered severe brain damage as a result of a car accident. Surgery was performed to remove damaged brain tissues resulting in severely impaired mental functions. Although her short term memory, ability to name objects, and ability to speak in coherent sentences were deficient, her motor functions were not affected. The court reduced the lower court's general damage award of $3,540,000.00 to $700,000.00 as the highest award possible, given the amount of special damages awarded.
In Trahan v. State, Through DOTD, 536 So.2d 1269 (La.App. 3d Cir.1988), a twenty-one *764 year-old man suffered severe closed head injuries which resulted in three separate brain operations and permanent brain damage. Just as Gary in the case sub judice, a portion of this young man's left temporal lobe was removed. He was similarly described as being quick-tempered, depressed, argumentative, and frustrated. The appellate court found the award in the lower court of $1,000,000.00 for both special and general damages to be an abuse of discretion. The general damage award was raised to $700,000.00, as the lowest possible amount which would have been within the discretion of the trial court.
In light of the above cited jurisprudence and the policy of giving great deference to the trier of fact, we conclude that the general damage award of $800,000.00 for past and future pain and suffering and loss of quality of life is not an abuse of discretion and is affirmed.
RETROACTIVITY OF LSA-R.S. 13:5106(B)(1)
In addition to arguing that the trial judge's general damage award was excessive, DOTD claims that LSA-R.S. 13:5106(B)(1) limits a general damage award against the state to $500,000.00. We disagree. Enacted by Acts 1985, No. 452 the statute did not become effective until September 6, 1985, two months after the accident in question.
The Louisiana Supreme Court, in Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), has recently held LSA-R.S. 13:5106(B)(1) is clearly substantive in nature, and, therefore, is not be to retroactively applied.

JOEL HOOD'S DAMAGES
Appellant claims the trial court erred in making an excessive award to the Hoods for Joel's wrongful death. Specifically, DOTD questions both the wrongful death award of $175,000.00 to each parent and the survival award of $7,500.00 for "pre-impact fear" experienced by Joel prior to death.

WRONGFUL DEATH
While some losses may be approximated with mathematical certainty, the loss of a child cannot easily be expressed in monetary terms. The judge has much discretion in awarding damages for loss of love, affection, and support. Reck v. Stevens, supra.
The record reveals that Joel and his parents experienced an unusually close, loving relationship. The Hoods had three sons, Joel (age 13) being the youngest by eight years. Since both of the older sons were married, Joel was like an only child, and therefore received great amounts of love and attention. Joel came along later in his parents' lives, at a time when they were more mature and better financially equipped to provide for him. Dr. Paul Ware, a psychiatrist, testified that they had "wrapped their lives around Joel and his activities." Joel's mother even took piano lessons so she could accompany her son during his violin lessons and recitals. In his report, Dr. Ware described the Hoods' relationship with Joel as follows:
"They both felt that he was almost perfect. They described him as very loving, very sensitive, and very responsive. He was always a pleasant addition for either of them to have with them. He was very responsible and seemed to love living and everything he did."
Several witnesses spoke of the Hoods' "total ... complete destruction" and the extent of devastation caused by Joel's death. The Hoods joined Compassionate Friends, a support group, for three and a half years in order to cope with their son's death. Don Heacock, a Board Certified Social Worker with expertise in counseling families who have lost children, counseled Mrs. Hood for 38 one-hour sessions over a three year period. He testified to her profound depression, her extreme guilt and blame, and her complete denial of Joel's death. A co-worker testified that Mrs. Hood went to Joel's grave twice a day for at least three years. Mrs. Hood continues to drive past both the cemetery and the *765 accident site daily as she drives to work. Dr. Ware described the Hoods as being "stuck in the grieving process" and refusing to let go of their son.
The highest amounts awarded in factually similar cases have generally been in the range of $150,000.00 to $225,000.00. In Whittington v. American Oil Co., 508 So.2d 180 (La.App. 4th Cir.1987), writ denied 512 So.2d 436 (La.1987), the parents of a 14 year old passenger and 18 year old driver who were killed in a car accident were each awarded $225,000.00 and $200,000.00, respectively. In Hardy v. Cumis Insurance Co., 558 So.2d 625 (La.App. 1st Cir.1990), writ denied 559 So.2d 1385 (La. 1990), the court reduced an award from $250,000.00 to $175,000.00 as the highest award possible to parents of a major son who died in a car accident. Considering the foregoing jurisprudence and the extremely close relationship between the Hoods and their son, we hold that the trial court's award to each parent for wrongful death of their son was not an abuse of his discretion.

SURVIVAL ACTION
The trial court awarded the Hoods $7,500.00 for their son's pre-impact fear.
The only Louisiana state decision we have found involving an award solely for pre-impact fear occurring in an automobile accident was decided by this Circuit. In Thomas v. State Farm Insurance Co., 499 So.2d 562 (La.App. 2d Cir.1986), writ denied 501 So.2d 213, 215 (La.1987), this court reduced a passenger's award for pre-impact fear from $15,000.00 to $7,500.00 as the highest award possible. Evidence revealed that the driver, upon viewing an oncoming car out of control, exclaimed, "Oh, no, Mom!" at which time she grabbed her son's arm and gasped. The mother was awarded damages for her fright even though she died upon impact.
We find that the evidence in this record substantiates the award of pre-impact fear for Joel Hood. Although there was no testimony presented that Joel verbally expressed fear prior to death, it was reasonable for the trial court to conclude from the circumstances that he was probably extremely frightened while being thrown around in the truck as it overturned several times and as he was ejected from the vehicle. The trial court's determination was not manifestly erroneous.

RETROACTIVITY OF LSA-R.S. 13:5112(C)
Lastly, appellant claims the trial court erred in awarding more interest than is permitted by LSA-R.S. 13:5112(C). This statute provides in part:
C. Legal interest on any claim for personal injury or wrongful death shall accrue at six percent per annum from the date of judicial demand until the judgment thereon is signed ...
Added by Acts 1985, No. 509, effective September 6, 1985.
LSA-C.C. Art. 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Likewise, LSA-R.S. 1:2 provides that "no section of the Revised Statues is retroactive unless it is expressly so stated."
We find that LSA-R.S. 13:5112(C) is clearly substantive in that it limits the amount of interest that may accrue in a personal injury case. This legislation affects the very substance of a parties' claim for damages, similar to the Supreme Court's treatment of LSA-R.S. 13:5106(B)(1) discussed in Socorro v. City of New Orleans, supra.
Furthermore, Section 2 of Acts 1985, No. 509 provides:
The provisions of Section 1 of this Act, providing that interest on any claim shall not run or accrue until the judgment thereon has been signed by the judge, shall apply only to claims based on occurrences arising after the effective date of this Act. (Emphasis supplied.)
Although poorly worded, we believe the legislature intended for Section C of LSA-R.S. 13:5112 be applied only to personal injuries occurring after September 6, 1985.
Because LSA-R.S. 13:5112(C) is clearly substantive in nature, the trial court was *766 correct in refusing to apply it retroactively to this case.[1]

CONCLUSION
In summary, we affirm the trial court's finding of liability on the part of DOTD. We also find that Anthony Gantt was at fault and apportion 20% fault to Gantt and the remaining 80% to DOTD.
For the foregoing reasons, and recognizing DOTD to be 80% liable and Ronald Wayne and Rita McBride Gantt to be 20% liable, the trial court judgment is hereby amended to grant judgment in favor of Kenneth Layton and Sara Jo Hood in the sum of Three Hundred Sixty-Three Thousand Two Hundred Six and 76/100 ($363,206.76) Dollars, in solido, against State of Louisiana, Through the Department of Transportation and Development, Ronald Wayne and Rita McBride Gantt, Capital Enterprise Insurance Group, to the extent of its policy limits, and Safeco Insurance Company for all amounts in excess of the policy limits of Capital Enterprise Insurance Group to the extent of Safeco's uninsured motorist policy limits, together with legal interest thereon from date of judicial demand until paid, and further recognizing the contribution rights of each defendant cast in judgment against all other defendants cast to the extent of any payments made to the Hoods according to law, and in accordance with incidental actions filed by such paying defendant(s).
The trial court judgment is further amended to grant judgment in favor of Ronald W. Gantt, as Adminstrator of the estate of the minor child, Gary Don Gantt, in the sum of One Million Six Hundred Thirty-Five Thousand Seven Hundred Ninety-Eight and 87/100 ($1,635,798.00) Dollars, against State of Louisiana, Through the Department of Transportation and Development, with legal interest thereon from date of judicial demand, until paid.
The trial court judgment is further amended to grant judgment on the third party demand of the State of Louisiana, Through the Department of Transportation and Development, recognizing its contribution rights with respect to the above award to the Gantts, against Ronald Wayne and Rita McBride Gantt and Capital Enterprise Insurance Group, in solido, for the 20% fault attributed to Anthony Gantt, said Capital only to the extent of its policy limits, and recognizing that Capital has previously paid to the Gantts the sum of Seventy-Nine Thousand Seven Hundred Three and 65/100 ($79,703.65) Dollars for which it is entitled to credit.
The trial court judgment is further amended to grant judgment in favor of third party defendants, Kenneth Layton and Sara Jo Hood, and against third party plaintiff, State of Louisiana, Through the Department of Transportation and Development, dismissing its demands, with prejudice.
All costs in this court and in the trial court are assessed 80% to the State of Louisiana, Through the Department of Transportation and Development, and 20% to Ronald Wayne and Rita McBride Gantt and Capital Enterprise Insurance Company, all in solido.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Because we do not apply LSA-R.S. 13:5106(B)(1) or LSA-R.S. 13:5112(C) retroactively, any discussion of their constitutionality raised by the Gantt's on this appeal is unneccessary.