h JONES, Judge.
This is an appeal from a judgment awarding Mona McMahon $166,000 in damages for injuries sustained when she was struck by a bus owned and operated by defendants Regional Transit Authority (RTA), and Transit Management of Southeast Louisiana (TMSEL).

FACTS

On November 20,1986, a bus owned by the RTA struck appellant, Mona McMahon, while she was riding her bicycle. Plaintiff alleged that as a result of the accident, she sustained a linear skull fracture.
Defendants, RTA, TMSEL, and Duane Boulden stipulated to liability prior to trial. Suit against the RTA was tried before a judge alone, and the suit against TMSEL and Mr. Boulden was tried before a jury. At the conclusion of trial, the jury awarded Ms. McMahon $75,000 for past pain and suffering and mental anguish, $75,000 for future pain and suffering and mental anguish, $10,000 in past medical expenses, $6,000 in future medical expenses, and nothing for past and future impaired earning capacity. The court adopted the jury verdict and entered judgment against TMSEL and Mr. Boulden in the amount of $166,000, after thefrtrial court had rendered judgment in favor of Ms. McMahon and against the RTA in the amount of $166,000. It is from these judgments that Ms. McMahon appeals.

DISCUSSION

In her first assignment of error, Ms. McMahon argues the jury and the trial court erroneously determined that all of her injuries were not attributable to the defendant’s negligent conduct. Specifically, Ms. McMahon argues the evidence of prior drug use and of her unstable early family life was insufficient to justify such a low award of damages. We agree. Based upon the evidence presented at trial, we find that the defendants failed to establish the relevance of her prior drug use.
There was never a dispute between the parties as to the genuineness of Ms. McMahon’s injuries. The defendants acknowledge that she suffers from constant, chronic headaches, and various emotional problems. The question before the court was that of causation.
The defendant’s allege that the cause of Ms. McMahon’s present medical problems *394 is her extensive history of drug abuse. Ms. McMahon testified that she stopped taking intravenous drugs in 1974 or 1975, cocaine in 1976, and stopped taking all drugs by 1978. However, she admitted using cocaine once in April of 1989, when she visited her boyfriend in an attempt to reconcile their relationship.
In support of their contention, the defendants rely upon the testimony of Dr. Richard Garey. Prior to his testimony, Ms. McMahon objected to the acceptance of Dr. Garey as an expert witness and requested a hearing to further question him about his qualifications. This type of limited hearing is commonly referred to as a “Daubert” hearing. It allows the trial court to conduct a preliminary assessment of whether the reasoning or methodology underlying the purported testimony is scientifically valid and whether it can be applied to the facts at issue. The trial 13 court is to determine by asking whether the technique has been subjected to peer review or publication, by inquiring as to the known or potential rate of error, the standards controlling the techniques’ operation and testability, and finally, whether there has been acceptance in the scientific community. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
After a limited inquiry of Dr. Garey’s qualifications as an expert witness, the trial court accepted him as an expert in the field of neuroscience.[1]
Dr. Garey testified that when considering Ms. McMahon’s injuries in light of the accident and her history of drug abuse, “it could be either one of the two or most likely a combination of the two, that is if there was some damage through the accident it was exacerbated or made worse by the use of the drugs ...” Additionally, Dr. Garey testified: “I cannot tell what exactly caused the changes in appellant’s personality, but they were probably triggered by the accident or something else that happened in her life, but it could have been a result of the build up of the drug abuse.” (emphasis added).
Dr. Garey failed to demonstrate that his speculation had a reasonable basis in science. His testimony regarding the long term effects of marijuana use was based on tests conducted on monkey’s in the late 70’s and early 80’s. He admitted that these findings could only be extrapolated to humans correctly through high degrees of correlation, which was never shown with regard to long term marijuana use in the human brain. When asked if marijuana can cause a diffuse axonal injury in humans, Dr. Garey replied, “No, I’m going to have to qualify that. Marijuana can do that in monkeys. That is the only evidence in primates that this actually occurs.”
I ¿¡This type of speculation was prevalent throughout most of Dr. Garey’s testimony. Despite his training, Dr. Garey could only suggest that drug use “could” have been a contributing cause of appellant’s problems— he had no opinion whether it was, or even whether it was more probable than not the one and only cause.
In addition to the testimony of Dr. Garey, the jury heard from another defense witness, Dr. Warren Levy. He was accepted by the court as an expert in the fields of neurosurgery and neurology. Dr. Levy examined Ms. McMahon in July of 1987, and in October of 1990.
Dr. Levy opined that Ms. McMahon did not appear to have “any difficulty with what I call higher intellectual functions ... Higher intellectual functions include memory, the ability to speak in [a] manner consistent with your educational background, and the ability to speak without searching for words ...” He further opined that her nerve functions were normal and that she had no residual organic brain injury.
Additionally, he denied the possibility that Ms. McMahon’s headaches were caused by the accident. “In all probability, her headaches have no relationship whatever to the less than one minute of unconsciousness and/or the linear skull fracture and/or possible two areas of bruising in the brain.”
Dr. Levy’s general opinion was that Ms. McMahon’s brain suffered “no abnormality.” This opinion was later tempered by his assertion that her MRI scan revealed two possible *395 abnormalities. Dr. Levy testified: “Well that MRI scan, as it was a good scan for its time, disclosed what I thought might be a small bruise on the tip of the temporal lobe on the left side and the frontal lobe on the right side.” Dr. Levy concluded his testimony by stating that in his opinion, Ms. McMahon’s brain is normal.
IsThe jury also heard testimony from several of Ms. McMahon’s treating physicians. First, there was Dr. Louis Garcia-Oller, a neuropsychiatrist licensed in the State of Louisiana who treated Ms. McMahon from November of 1986 to February of 1990. Dr. Garcia-Oller is a board certified specialist in neurological surgery and has specialized in brain surgery since 1947.
Dr. Garcia-Oller testified that, based on his examination of Ms. McMahon just days after her accident, she had a skull fracture and a head injury explaining her condition, but stated that he did not have any x-rays. Dr. Garcia-Oller summarized the symptoms upon which he based his initial opinion: “In summary, we had evidence of brain injury to the eye coordination, the double vision, the pupils, neck injury, and neck stretch with injury to the nerves in the spinal canal, and then somehow, the brain injury was reflected in the toe reflex, which usually means that somewhere in the head in the motor control, usually in the brain hemispheres, the sides of the head; there has been some damage to the function of the nervous system. Those were the abnormalities on the physical neurological examination.” From these abnormalities, Dr. Garcia-Oller testified, “[i]t was obvious to me that this patient had [a] scalp laceration with indications of a skull fracture ... and that she had some brain dysfunction. Her brain was not working properly on all these levels.” He later testified that Ms. McMahon had a brain contusion. “[S]he had a contusion affecting the brain ... from an accident that caused her skull fracture ...”
Additionally, Dr. Garcia-Oller testified that the CT and MRI scans revealed that the contusion was significant. “Once you have blood in various levels of the brain, I classify it as a significant injury. It wasn’t a little bitty bruise. There were wide areas of the brain that were bruised enough to cause bleeding and bruising.” He testified that bleeding damaged Ms. McMahon’s brain cells. “[S]ome of them have been damaged, killed ... brain cells never reproduce again.”
Rln addition to these injuries, Dr. Garcia-Oller opined that Ms. McMahon sustained “axonal injuries that effected her memory, her headache, and behavior, but she also had bruising of the brain of the temporal lobe that effects behavior. We know her nerve of hearing was affected, she was very sensitive to noise.” He went on to say that an EEG on her brain wave activity showed she had temporal lobe spikes. He opined that temporal lobe spikes are good indications of brain damage. Spikes are damaged nerve cells that do not function properly. Dr. Garcia-Oller concluded by stating that in his opinion all of Ms. McMahon’s symptoms are related to the head injury.
Dr. Leon Weisberg is board certified by the American Board of Psychiatry/Neurology with special competence in adult neurology. At the time of trial, he was the head of the Neurology section at the Tulane Medical School, as well as the Head of Neurology and Neurological Service at Charity Hospital.
Dr. Weisberg examined Ms. McMahon in April of 1991. He testified that after reviewing MRI scans he determined that she had a left frontal, a right temporal, and a left parietal hemorrhagic contusion, which are bruises to the brain. He testified that “plaintiffs brain was significantly bruised.”
Dr. Weisberg also determined that Ms. McMahon “had a diffusely abnormal brain wave, which is a manifestation of the bruises she had to her brain. She had a skull fracture, she had MRI abnormalities of con-tusional injuries ... as well as abnormal electrical activity which signifies this was a rattling of the neuro-chemical transmitters in the brain causing electrical abnormalities.” He further determined that she had “a contusional injury to multiple areas of the brain, including the cerebral hemisphere in the deep area of the brain called the mid-brain.” He further stated that this type of injury “would imply that there is a greater risk of having sequela or consequences in your cognitive or intellectual function. The *396 more injuries, the more likely you are to have permanent injury.”
^Additionally, Dr. Weisberg testified, “I believe that this patient has evidence, based on her MRI findings and/or clinical findings, consistent with diffuse axonal injury. The axons are the electrical system in the brain. They’re like electrical wires and with a traumatic injury such as the patient suffered, these long axons can be sheared and what you get is electrical short circuits.”
Dr. Weisberg further testified that Ms. McMahon’s head injury was “moderate to severe.” He testified that based on her mental status examination results, “I thought that there were memory disturbances. I thought she was slower in her intellectual processes, and this would be consistent with parietal, temporal, and frontal injuries she had on her MRI scan.” Additionally, he characterized Ms. McMahon’s headaches as “post-traumatic migraine.” Finally, Dr. Weisberg, interpreting Ms. McMahon’s neurological test results, opined that it showed findings which could be consistent with an organic brain injury.
Dr. Richard Morse, a board certified specialist in psychiatry, neurology, and pain medicine examined Ms. McMahon in September of 1988, and June of 1989. At the time of trial, Dr. Morse was an associate professor of psychiatry at Louisiana State University School of Medicine and director of The Touro Center for the Treatment of Chronic Pain.
His diagnosis of Ms. McMahon was that she suffered from soft tissue pain syndrome, depression, post-concussional syndrome, and physical or organic personality change. Dr. Morse further testified that she had a muscle tension headache and pain fixation “from the blow on an emotional basis.”
Ms. McMahon was also examined by Dr. Jonathan Mueller, a neuropsychiatrist who is board certified with certificates of specialization in both psychiatry and neurology. Dr. Mueller is licensed as a physician and a surgeon in the state of California. Dr. Mueller treated Ms. McMahon from April of 1994 through January 18, 1996, the date of trial. His diagnosis was that she suffered 18hemorrhagic contusions on the frontal and temporal lobes of her brain as well as to the cerebellum. “In addition to those injuries, Miss McMahon sustained another kind of injury which is known as diffuse axonal node injury, which is a twisting, a tearing, a shearing of nerve fibers.” Dr. Mueller testified that the most frequent problems that arise from a diffuse axonal injury “have to do with mental speed, power, and stamina, or the short term for that is poor concentration. People fatigue more easily, not only in mental activities, but in terms of physical activities.” According to Dr. Mueller, intellectual problems relating to memory and the ability to absorb new information also result from this injury. “From an emotional perspective, these people (who suffer from diffuse axonal injury) oftentimes look flat, blunted, apathetic ... They don’t find themselves thinking in as spontaneous, playful, or creative a way as they typically do, or did before ...” Dr. Mueller testified that he has observed most of the symptoms of diffuse axonal injury in plaintiff. “Mona’s picture is extremely typical for diffuse axonal injury. But the other thing that’s very prominent in her is a chronic pain syndrome, chronic headaches.” He went on to state that chrome pain syndrome is “a picture in which people have pain that lasts ... for years on end”, and that “people who are subjected to chronic pain, just as individuals who are held captive and tortured for a long time ultimately get to the point where they are depressed ... They do not react in the same way to a variety of situations.” He further stated that chronic pain is often associated with poor leep, poor concentration, poor energy, and inability to feel refreshed.
In Dr. Mueller’s opinion, Ms. McMahon also suffered from reactive depression. “She is extremely aware of the ways in which she is different, of the ways in which she has to struggle to get her job done.”
|9Pr. William Black, a licensed psychologist with a specialty designation in clinical neurology by the Louisiana State Board of Examiners of Psychologists, examined Ms. McMahon in December, 1987, and November, 1988.
Dr. Black testified the results of his testing were consistent with traumatic brain injury. He testified that in addition to the neurologi *397 cal damage he observed, Ms. McMahon also demonstrated behavioral and emotional changes which were attributable to the head injury. He testified that these behavioral and emotional changes rendered life more difficult for her. He further testified that the neurological deficiencies relate to her memory, motor functions, and visual analytical ability.
Dr. Black concluded his testimony by stating that Ms. McMahon displayed typical post-concussional symptoms including problems with sustained mental concentration and with stress.
Ms. McMahon was also examined by Dr. Chet Scrignar, a board certified Psychiatrist. Dr. Scrignar examined her from October 1987, through November, 1990. Ms. McMahon was referred to Dr. Scrignar by Dr. Garcia-Oller.
Dr. Scrignar diagnosed Ms. McMahon as suffering from post-traumatic stress syndrome, an organic personality disorder. It was his impression that these afflictions directly related to her bus accident. Dr. Scrig-nar further testified that Ms. McMahon showed significant signs of brain injury, or brain damage.
There was also testimony from Dr. Susan Andrews. Dr. Andrews is a clinical psychologist who specializes in the diagnosis and treatment of brain injuries. At the time of trial, she had been in private practice for approximately 10 years. She was accepted by the court as an expert in the field of clinical neuropsychology.
Dr. Andrews’ diagnosis of Ms. McMahon was that she suffered from organic personality disorder syndrome (organic brain damage) and chronic post hpconcussion syndrome. Dr. Andrews opined that these afflictions resulted from her bus accident.
Having found that the evidence produced at trial establishes that the defendants are responsible for the full extent of Ms. McMahon’s injuries, we find that the judgment rendered by the trial court is manifestly erroneous. The damage award was not reasonable in light of the testimony and evidence introduced at trial. Therefore, we reform the damages award to increase the award to the lowest amount the jury could have reasonably awarded in this case.
The evidence produced at trial clearly supports Ms. McMahon’s claim that she suffers from impairment of memory, decrease in intelligence, a decreased ability to process information, and emotional problems. These deficiencies are in areas which permeate every aspect of her life.
The jury rendered a verdict awarding Ms. McMahon $150,000 for past and future pain and suffering and mental anguish against the defendants. The trial court rendered judgment in the same amounts against the RTA. However, a review of the recent case law relative to general damage awards for brain injury victims show that this amount is grossly inadequate to compensate Ms. McMahon for her injuries.
In Bernard v. Lott, 95-0167 (La.App. 4 Cir. 12/28/95), 666 So.2d 702, the plaintiff suffered trauma to the head resulting in a brain injury. As a result of the trauma, the plaintiff suffered from decreased I.Q., difficulties in memoiy and concentration, and a borderline personality disorder. The trial court awarded $200,000 in general damages, but this Court found the award inadequate to reasonably compensate the plaintiff. Based on a survey of current case law, this Court found that “the lowest reasonable award for general damages is $750,000.” 666 So.2d at 708.
Inin Bernard, we found that the plaintiffs injuries were similar to those experienced by plaintiffs in Davis v. State, Dept. of Trans. and Development, 94-308 (La.App. 3 Cir. 12/7/94), 647 So.2d 552, unit denied 95-0034 (La.1/27/95), 649 So.2d 382; Hoyt v. State Farm Mut. Auto. Ins. Co., 623 So.2d 651 (La.App. 1st Cir.), writ denied 629 So.2d 1179 (La.1993); Horton v. McCrary, 620 So.2d 918 (La.App. 3 Cir.1993), affd. in part, rvsd. in part, on other grounds 93-2315 (La.4/11/94), 635 So.2d 199; Hood v. State Through Dept. of Transp. and Development, 587 So.2d 755 (La.App. 2d Cir.), units denied 590 So.2d 81, 82 (La.1991), where the courts awarded between $750,000 and $800,000 for head injuries resulting in decreases in intelli *398 gence, impaired memory, and emotional problems.
We find that Ms. McMahon suffers from simiHar injuries experienced by the Bernard, Horton, and Hood plaintiffs; impairment of memory, decreased intelligence, and emotional problems. In addition, Ms. McMahon suffers from constant and chronic pain. The uncontroverted testimony at trial was that prior to the accident, Ms. McMahon was a vibrant, energetic person who enjoyed life and interaction with people. Since the accident she has become an emotionally detached person with no social life. Accordingly, we find the lowest reasonable award for general damages for Ms. McMahon’s injuries is $500,000.
Ms. McMahon further seeks review of the trial court’s failure to award damages for impairment of earning capacity. Having reviewed the entire record, we cannot say that the jury was clearly wrong in failing to award damages for future wage losses or loss of earning capacity.
For the foregoing reasons we amend the judgments of the trial court to the extent that the judgements found the defendants were not responsible for the full extent of Ms. McMahon’s injuries. We find that Ms. McMahon sustained a closed head injury and the defendants are each responsible for the full extent of that |12injury, in solido. The damages are amended to award Ms. McMahon $500.000 in general damages.
Finally, the trial court rendered two judgments, but failed to indicate that the defendants are hable unto Ms. McMahon in solido. We further amend the judgments to find defendants TMSEL, Mr. Boulden and the RTA liable, in solido. In all other respects, the judgments are affirmed.

AMENDED AND AFFIRMED AS AMENDED.

CIACCIO, J., dissents.

. Neuroscience is defined as the study of the affects of drug use on behavior.