798 So.2d 1204 (2001)
Mrs. Nhung D. DANG
v.
NEW HAMPSHIRE INSURANCE COMPANY, Genuine Parts Company and Cesar A. Nunez.
No. 2000-CA-1554.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 2001.
*1205 Sandra D. Guidry, George H. Troxell, III, New Orleans, LA, Counsel for Plaintiff/Appellee.
Joseph R. McMahon, Jr., Metairie, LA, Counsel for Defendants/Appellants.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, and Judge PATRICIA RIVET MURRAY.
JONES, Judge.
In this personal injury claim brought by Plaintiff/Appellee, Nhung Dang, against Defendants/Appellants, New Hampshire Insurance Company, Genuine Parts Company and Cesar Nunez (hereinafter "Appellants"), all Appellants appeal the judgment of the district court wherein the court granted the Motion for Judgment Notwithstanding the Verdict filed by Mrs. Dang. Appellants specifically appeal the decision to set aside the jury verdict finding Mrs. Dang 60% at fault and awarding her $10,000 in general damages. Thereafter, the district court apportioned 100% comparative fault to Mr. Nunez and increased the award of damages to $250,000. This timely appeal follows. We affirm.

Facts
On the evening of May 17th, 1994, at approximately 5 o'clock p.m., Mrs. Dang was crossing Poydras Street in the Central Business District of New Orleans when an automobile driven by Mr. Nunez struck her. Mrs. Dang was carrying a purse and a briefcase when she attempted to cross *1206 the street to wait at the bus stop on the corner of Poydras and Baronne Streets. While having the green light, Mrs. Dang crossed half of the street onto the median. When Mrs. Dang was approximately halfway across the street on the other side of the median the light facing in her direction turned yellow. Realizing that the light had changed, Mrs. Dang stopped and then continued across the street.
Mr. Nunez was driving a Chevrolet truck owned by Genuine Parts Company at the time and he was in the course and scope of his employment. His vehicle was stopped at the red light on Poydras and Baronne Streets. Mr. Nunez testified that once the light facing him turned green that he proceeded into the street although his view on his left side was blocked by the van next to him. As Mr. Nunez started to move, he observed Mrs. Dang push her hand onto the hood of his car to stop him from hitting her. She immediately fell to the ground. Mr. Nunez claims that Mrs. Dang "jumped" in front of his car and that she came out of nowhere. Ms. Donna Schaferkotter, an eyewitness standing at the bus stop, testified that she observed the entire accident and that she had screamed repeatedly to the "white delivery truck" (the automobile driven by Mr. Nunez) to stop, yet she was unsuccessful in her attempts to get Mr. Nunez's attention. Once he came to a stop, Mrs. Dang lay face down in the street.
A New Orleans Emergency Medical Service unit arrived on the scene approximately three minutes later. Officer St. Germaine took the police report. Mrs. Dang testified that she has no recollection of the accident, however, the evidence supports that she was able to give the policeman a report once he arrived at the scene. Mrs. Dang was immediately brought to Tulane University Medical Center and released that same evening. She subsequently underwent additional medical treatment.

Procedural History
Mrs. Dang filed a Petition for Damages in the Civil District Court for the Parish of Orleans against Appellants in May of 1995. A jury trial was held on February 14th and 15th, 2000 in which a verdict for $10,000 was rendered assessing Mrs. Dang at 60% comparative fault and all of the defendants at 40% comparative fault jointly, severally and in solido for a judgment value of $4,100. Mrs. Dang filed a JNOV, Motion for Additur or New Trial. The district court granted the JNOV and set aside the jury's verdict. Thereafter, the district court apportioned 100% comparative fault to Mr. Nunez and increased the award of damages to $250,000 jointly, severally and in solido as to each defendant. From the district court's Judgment arises this appeal.

Argument

Granting of JNOV
Appellant's first assignment of error is that the district court erred in granting Mrs. Dang's JNOV as it pertains to the issue of liability. They argue that in light of the testimony, evidence, facts, and circumstances of the accident, reasonable persons could differ as to the percentage of liability. We must note that the Appellants have a separate assignment of error as to the percentage of fault allocated to Mr. Nunez; therefore we will first address whether the granting of the JNOV was proper.
Mrs. Dang argues that the evidence produced at trial was enough to establish that the district court was within its discretion in granting the JNOV. LSA-C.C.P Art. 1811(F) provides: "The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues". The *1207 oral reasons for judgment given by the district court was based on Anderson v. New Orleans Public Service, 583 So.2d 829, 834 (La.1991). "Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact". The Appellants offer no legal basis to support their opposition of the trial court's granting of the JNOV. They rely only on their subjective view of the testimony and evidence produced at trial. "A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men should not arrive at a contradictory verdict." Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986).
After review of the record, we find that the district court was not erroneous in granting the JNOV. The testimony established that Mrs. Dang was indeed hit by Mr. Nunez. She entered the street prior to the light changing and therefore had a right to continue across the street. Mr. Nunez had a duty to observe and proceed with caution, which he failed to do. Testimony from an eyewitness, Ms. Schaferkotter, supports the district court's findings as well as the medical and police reports. The jury's verdict was unreasonable in light of the facts and circumstances. No reasonable person could conclude that Mrs. Dang's fault is higher than that of Mr. Nunez's when Mr. Nunez agrees that she was in a marked crosswalk, that she proceeded across the street after having the right-of way and that his vision was indeed blocked.
Appellants further contend that the district court was erroneous in the conditional grant of Mrs. Dan's Motion for New Trial if the JNOV was hereafter vacated or reversed. La. C.C.P. Art. 1811(C)(1) provides:
If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reserved and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not effect the finality of the judgment. (emphasis added)
Thus, the specific language in the above article indicates that the district court did not err in the conditional grant of Mrs. Dang's Motion for New Trial.
Appellant's rely on Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745, and refer to the Supreme Court's observation that the "appellate court has the power to decide factual issues de novo. The exercise of that power is still limited to the jurisprudential rule of practice that a trial court's factual findings will not be upset unless they are manifestly erroneous or clearly wrong". (emphasis added).
Accordingly, the necessary criterion for this Court to exercise such power does not exist in the instant case. We find no reason to disturb the district court's ruling in the instant case, especially in light of the clear language in La. C.C.P. Art. 1811(C)(1). The Supreme Court's decision in Ferrell grants this Court the power to review the findings of fact and only exercise our authority when we can establish that the district court was clearly wrong. After review of the record, we decline to upset the district court's finding of facts because its decision to grant Mrs. Dang's conditional Motion for a New Trial was not erroneous nor does Ferrell support that argument. Appellant's assignment of error is without merit.

*1208 Liability

In the event that we determine that the district court did not err in granting Mrs. Dang's JNOV, Appellants further argue that the district court erred in finding that Mr. Nunez was 100% liable for the damages caused to Mrs. Dang after the jury concluded that Mrs. Dang was 60% at fault and Mr. Nunez was only 40% at fault. Mrs. Dang, on the other hand, finds no error in the district court's allocation of fault as to Mr. Nunez.
Appellants base their argument on the testimony introduced at trial and they conclude that Mrs. Dang should have been assessed with at least 40% liability, however, once again Appellants offer no legal basis to aid their argument.
Relying on Anderson v. New Orleans Public Service, 583 So.2d 829, 834 (La. 1991), as did the district court, we find that after the proper granting of the JNOV, the district court was well within its discretion to throw out the jury verdict completely. We further conclude that this case, unlike Anderson, wherein the court found "... The evidence presented to the jury was of such a conflicting nature that it is impossible to say that reasonable men could not reach different conclusions ..." is distinguishable. The record before us does not present such a conflict and we agree that this record supports the finding of 100% fault as to Mr. Nunez and that reasonable men could reach different conclusions.
Mrs. Dang relies on Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La.1985), to support the finding of 100% comparative fault. In Turner the pedestrian, who was hit by a bus while crossing in the crosswalk, was found 10% comparative fault. In the instant case, the district court's Reasons for Judgment indicate that if the jury had come back with 10-20% comparative fault for Mrs. Dang they (the jury) would have been "closer".
Appellants do not dispute that Mrs. Dang was walking in a marked pedestrian crosswalk when the accident occurred. There is no dispute that Mr. Nunez was indeed stopped at a red traffic light and that although Mr. Nunez's light was green when he saw Mrs. Dang, she was already in front of his truck. The eyewitness, Ms. Schaferkotter, testified that the light changed to yellow as Mrs. Dang proceeded across the street. The photographs in evidence reveal that Mrs. Dang did not place herself at any greater risk whether she continued across the street or decided to return to the median. The district court found that Mrs. Dang had the right to continue across the street. According to LA R.S. 32:214, Mr. Nunez had a duty as a driver to exercise precaution as to Mrs. Dang. "[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway". In light of the evidence, no reasonable juror could have reached the conclusion that Mrs. Dang was 60% at fault.
We will not alter the decision of the district court because there is no "manifest error" and the district court was not "clearly wrong", Stobart v. State through Dept. of Transp. And Development, 617 So.2d 880, (La.1993). As it stands, the evidence supports the district court's finding that Mr. Nunez was 100% at fault.

Quantum
Prior to the granting of Mrs. Dang's JNOV, the jury awarded total damages as a result of the accident in the amount of $10,000, and the district court increased that award to $250,000 after the jury's verdict was set aside. Appellants *1209 argue that the district court erred in increasing the award and that this action constituted an abuse of the district court's discretion. "The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages and in apportioning fault; the award or apportionment must be so high or so low in proportion to the injury or fault that it shocks the conscience." Courteaux v. State, through DOTD, 745 So.2d 91 (La. App. 4th Cir.1999).
Mrs. Dang came to New Orleans with five children from an Indonesian refugee camp in 1982. At the time of the accident she was employed at First National Bank in the accounting department and subsequently received her college degree. Appellants argue that the accident did not alter Mrs. Dang's lifestyle and that she went on to acquire a better job and maintain an A-B grade average.
Mrs. Dang testified that she suffered from severe headaches and that prior to the accident she was in good health. She explained that her headaches cause her vomiting and dizziness. She claims to suffer from personality disorders, mood swings, lack of sexual desire and a decrease in her I.Q. Her primary care physician, Dr. Barbara Cook, submitted into evidence Mrs. Dang's prior medical charts and a record of her treatment the day after the accident. Although neither party called Dr. Cook to testify, the medical records provided reveal that Mrs. Dang's health was satisfactory and she only occasionally complained of a headache but nothing as severe as what she has complained of since the accident.
Mrs. Dang was seen by several physicians who testified at trial including, but not limited to, Dr. Jonathan Chalkwood, a treating neurologist and Dr. Susan Andrews, a neuropsychologist. The testimony and evidence well establishes that Mrs. Dang suffered from a closed head injury although Appellants argue that her CAT scan turned up normal results. Dr. Chalkwood explained that in a head injury such as Mrs. Dang's, the structures that are damaged are the nerve cells that are smaller then a hair. The only way to see this type of damage is by microscopic examination of brain tissue after it has been removed from the head and treated with a stain. He concluded that MRI and CT Scans in the type of injury suffered by Mrs. Dang usually appear normal.
Appellant's argument that Mrs. Dang was able to work and go to school while maintaining good grades does not negate the fact that she was injured as a result of the accident. According to Dr. Andrew's testimony, Mrs. Dang's medical report stating that she was "headache free" was a temporary condition that did not exclude headaches from reoccurring in the future. Dr. Andrews testified that Mrs. Dang did have some difficulties with her attention and concentration as well as her motor speed. Dr. Andrews further testified that Mrs. Dang suffered with depression as a result of her injuries.
This Court, in Bernard v. Lott, 666 So.2d 702 (La.App. 4th Cir.1995) increased the district court's award of $200,000 to $750,000 for similar injuries suffered by Mrs. Dang, "[T]he plaintiff suffered trauma to the head resulting in a brain injury. As a result of the trauma, the plaintiff suffered from decreased I.Q., difficulties in memory concentration, and borderline personality disorder."
In McMahon v. Regional Transit Authority, 704 So.2d 392 (La.App. 4 Cir. 12/10/97), the plaintiff suffered from severe injury to the physical structure of the brain. As a result, the injuries included those extremely similar to Mrs. Dang's including headaches, memory problems, *1210 depression and decreased I.Q. In McMahon, this Court found that the lowest reasonable award for general damages was $500,000.
Considering the medical testimony, medical reports submitted into evidence and prior cases decided in this Court, we concluded that there was no abuse of discretion by the district court in awarding Mrs. Dang $250,000 in general damages plus interest and costs.

Decree
For the foregoing reasons stated herein, we find that there was no manifest error by the district court in granting Mrs. Dang's Motion For Judgment Notwithstanding the Verdict. We further find that the district court did not abuse its discretion in finding Mr. Nunez 100% liable for the injuries caused to Mrs. Dang. And this Court maintains the increase in general damages awarded to Mrs. Dang in the amount of $250,000 plus interest and costs.
AFFIRMED.
MURRAY, J., concurs in the result.